476 P.2d 680

**AMERICAN SAVINGS LIFE INSURANCE COMPANY, an Arizona corporation, Appellant,**

v.

**STATE of Arizona ex rel. Justin HERMAN, Director, Arizona Highway Department, Appellee.**

**No. 1 CA–CIV 1204.**

Court of Appeals of Arizona,
Division 1,
Department B.

Nov. 19, 1970.

Standage, Allen & Phelps by Gove L. Allen, Mesa, for appellant.

Gary K. Nelson, Atty. Gen., Phoenix, and Axline & Johnson by Raleigh W. Johnson, Holbrook, for appellee.

JACOBSON, Judge.

We are called upon in this appeal to determine whether a jury correctly determined that a property owner suffered no severance damages as a result of the construction of a controlled access highway.

On April 27, 1965, the appellee, STATE OF ARIZONA, filed an action in eminent domain against appellant, AMERICAN SAVINGS LIFE INSURANCE CO., an

Arizona corporation, and others, to acquire a strip of land 64 feet in width containing approximately four acres and lying south of U. S. Highway 66 east of Holbrook, Arizona. The original complaint sought the condemnation of an approximately three and one-half mile long strip of land 64 feet in width lying south of U. S. Highway 66 and involving twelve recorded subdivisions held by Arizona Land Corporation. However, the case was settled with the trustee of the bankrupt Arizona Land Corporation as to ten of these subdivisions leaving only the subject parcel for litiga-

tion. American Savings appeared on behalf of the owner of the property as it held a mortgage on the properties involved.[1]

On the day of taking, April 27, 1964, the entire property owned by American Savings was covered by two recorded subdivisions, Vein of Gold Unit No. 4, lying south of Highway 66 and Sun Valley Highlands No. 2, lying north of U. S. Highway 66.

The subdivisions as they appeared of record on the day of taking and the property sought to be condemned are illustrated by the following plat:

LAND CONDEMNED OUTLINED IN HEAVY BLACK

[70—Z]

For purposes of trial, and the jury was so instructed, the two subdivisions were considered as a 312-acre single parcel. In the before situation, referring to the time immediately prior to April 27, 1965, U. S. Highway 66 carried two-way traffic east and west, and access was theoretically available to all of the property lying both to the north and south of the highway. In this before situation, the subject property was separated from U. S. Highway 66 by

a right-of-way fence; openings in this fence were available by permission of the Arizona Highway Department. Prior to April 27, 1965, there appears to have been one steel gate located on the south of the highway on the property involved. In the after situation, referring to the time immediately after April 27, 1965, direct access from the property to Interstate Highway 40, which took the place of U. S. Highway 66 was completely eliminated. After the

1. American Savings shall for the purpose of this opinion be considered as the owner of the entire parcel of which the condemned strip is a part.

taking, the closest access to the property from the highway was by way of an interchange located approximately one mile west of the property known as the Sun Valley Interchange.

The jury returned a verdict finding that the value of the four acres taken by the State was $3,600.00, and further found that no severance damages were suffered. American Savings appeals from that portion of the jury's verdict and the judgment entered thereon denying severance damages.

American Savings raises three questions for review in its opening brief, the first question being:

"In a condemnation action involving a partial taking, must the expert witnesses enter into the task of evaluating separately and independently (1) the value of the land taken (2) the damages to the remaining land and (3) the special benefits, if any, accruing to the remaining land."

It would appear from a reading of American Savings' argument on this point that it is calling into question the validity of the testimony of the State's appraisal expert. However, this particular question was not brought to the attention of the trial court. Counsel for American Savings did not object to any testimony of the State's expert, did not request instructions dealing with this theory, did not cross-examine the State's expert as to whether he based his appraisal of the property in the manner called for by its question, nor were any motions made to strike the testimony of the State's expert on the basis he erred in failing to separately and independently evaluate the part taken, the severance damage and the benefits, if any. The only motion appearing in the record was after the close of all testimony and was as follows:

"Mr. Allen: I make a motion to strike the testimony of Mr. Ball (state's expert) saying there was no severance damages on his own testimony. Also move to direct the jury not to consider it."

■ A motion to strike testimony must be stated with particularity as to grounds and must be specific as to the portion of the testimony sought to be stricken. State ex rel. Herman v. Larriva's Ace Electric Co., 11 Ariz.App. 452, 465 P.2d 589 (1970); Blumenstein v. City of Long Beach, 143 Cal. App.2d 264, 299 P.2d 347 (1956). This objection does not comply with the specificity requirement as to the grounds required and the court properly denied such a motion.

■ The question of the manner in which the State's appraiser arrived at his appraisal not being raised in the trial court and the trial court not having been given an opportunity to pass thereon, the same will not be considered on appeal. Collins v. Dilcher, 104 Ariz. 221, 450 P.2d 679 (1969); Verdugo v. Po Shing Gee, 4 Ariz. App. 113, 417 P.2d 747 (1966).

The second question presented by American Savings is as follows:

"Did damages accrue to the larger parcel by reason of condemnation of all direct access to U. S. Highway 66, where as a result the remaining land was (1) separated from the New Highway interchange by one mile of unimproved road; (2) deprived of one one-half mile of Highway Frontage; and, (3) segregated into two unconnected parcels two miles apart?"

Again the court is pressed to determine the meaning of this question, but gleans from the argument that by this question American Savings is contending that it is at least entitled to nominal severance damages for loss of access. Perhaps a further contention is that the verdict of the jury is not supported by any evidence.

■ American Savings' first contention is contrary to the law as expressed in several Arizona decisions. The measure of severance damage in condemnation actions is the difference between the market value of the property immediately before the taking of the access and the market value of the remaining property immediately after such taking. State ex rel. Morrison v. Thelberg, 87 Ariz. 318, 350 P.2d 988 (1960).

This holding was amplified by Pima County v. Bilby, 87 Ariz. 366, 351 P.2d 647 (1960):

"Plaintiff's assertion that he is entitled at least to nominal damages—even if the value of his land was not diminished—because his easement of ingress and egress was partially 'taken', is not supported, as claimed, by A.R.S. § 12–1122, and is in direct conflict with the rule announced in State ex rel. Morrison v. Thelberg, supra. * * *"

While subsequent Arizona cases have enlarged the matters which may be considered by a jury in determining loss of market value because of diminished or controlled access, *See* State ex rel. Herman v. Wilson, 103 Ariz. 194, 438 P.2d 760 (1968); State ex rel. Herman v. Southern Pacific Co., 8 Ariz.App. 238, 445 P.2d 186 (1968), the fundamental rule that damage must be based on a diminution of market value of the remaining property has remained intact.

■ American Savings' second contention—sufficiency of the evidence—can best be answered by determining whether the jury had any reliable evidence before it on which they could find severance damages were suffered. We start first with the proposition that in a condemnation action, the condemnee has the burden of proving severance damages, State ex rel. Herman v. Mestas, 12 Ariz.App. 289, 469 P.2d 855 (1970); Suffield v. State ex rel. Morrison, 92 Ariz. 152, 375 P.2d 263 (1962). American Savings called as its only witness on the question of severance damages, its appraiser, Mr. Byrer.

■ First, Mr. Byrer testified that in his opinion the market value of the property had decreased by twenty-five percent. This was based on three factors: (1) That prospective buyers of lots could not get to the property directly from the highway, (2) a prospective seller would have to employ two sales forces, one on the property south of the highway and one on the north (increased costs of merchandising of the property) and (3) sales signs could not be placed on adjoining property to advertise the sale of the subject property. This last factor was stricken by the court as being noncompensable. Mr. Byrer testified in his opinion this third factor comprised ten percent of his estimate of severance damages. Cross-examination was then conducted as to how Mr. Byrer arrived at the ten percent reduction in estimated severance damages:

"Q: How do you arrive at this ten percent figure. Is this simply a guess on your part?

"A: I hope it is an educated guess. I don't think it is documented."

American Savings' appraiser further admitted that he had no knowledge or experience with other subdivisions where a limited access had cut off the property from the highway, nor did he have any sales of other parcels to substantiate his estimate of a decline of market value, but did admit that similar lots in the vicinity had not declined in value. When asked to determine what percentage the increased cost of merchantability of the property figured in his estimate of severance damages, he was unable to do so, although allowed time by the court to attempt such a determination. In short, a reading of Mr. Byrer's testimony reveals that he in fact was unable to substantiate or support in any way his opinion as to loss of market value by reason of loss of access. This becomes doubly clear when it is borne in mind that the two subdivisions, as platted in the before situation, provided no access to Highway 66. We quote with approval from Board of Regents of the University and State Colleges v. Cannon, 86 Ariz. 176, 342 P.2d 207 (1959):

"The opinion of a witness permitted to testify as an expert is not substantial evidence unless the witness can give a satisfactory explanation of how he arrived at his opinion.

"A verdict not supported by substantial evidence cannot stand."

We therefore hold that American Savings failed to prove severance damages, and that any other jury verdict than that returned would not be substantiated by the evidence.

American Savings' third question is as follows:

"Did the construction of a freeway interchange and the general advance of land values in the vicinity confer a special benefit on the remaining property?"

This question is again a rehash of the argument concerning the validity of the testimony of the State's appraiser. The question of general and special benefits was not argued before the trial court, nor were any instructions requested on this subject. What has previously been stated concerning American Savings' first question need not be repeated here.

Judgment affirmed.

HAIRE, J., and ROGER G. STRAND, Superior Court Judge, concur.

Note: Judge WILLIAM E. EUBANK having requested that he be relieved from consideration of this matter, The Honorable ROGER G. STRAND, Judge of the Superior Court of Maricopa County, was called to sit in his stead and participate in the determination of this decision.