[Civ. No. 35956. Second Dist., Div. One. Dec. 8, 1970.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS,
Plaintiff and Respondent, v.
CORPORATION OF THE PRESIDENT OF THE CHURCH OF JESUS
CHRIST OF THE LATTER-DAY SAINTS, Defendant and Appellant.

372

## COUNSEL

Gibson, Dunn & Crutcher, Samuel O. Pruitt, Jr., and John L. Endicott for Defendant and Appellant.

Harry S. Fenton, Joseph A. Montoya, Richard L. Franck, Robert L. Meyer and Charles E. Spencer, Jr., for Plaintiff and Respondent.

## OPINION

**THOMPSON, J.**—This is an appeal by the landowner, defendant in an eminent domain proceeding. We reverse the judgment upon the authority of *People* v. *Silveira,* 236 Cal.App.2d 604 [46 Cal.Rptr. 260].

The essential facts of the case at bench are not in dispute. Respondent filed the action in eminent domain which results in the appeal now before us to acquire property for the construction of the Foothill Freeway. Prior to the taking incident to the action, appellant owned a 264-acre parcel of property located to the north of Foothill Boulevard in the Sylmar area of San Fernando Valley. The property was approximately one mile long and one-half mile deep with access to Foothill Boulevard for most of its length. Prior to the taking the property appeared generally as follows:

Respondent, by the eminent domain action, condemned two parcels consisting of a strip of land approximately 240 feet deep running the entire

length of the property adjoining Foothill Boulevard. After the taking, the property appeared generally as follows:

Prior to the taking, the land had unrestricted access to Foothill Boulevard. After the taking, access was limited on the south to the southeast corner and to Glenoaks to the south via a tunnel.

Appellant's expert witnesses testified to a value of the property taken based upon a highest and best use consisting of commercial development near the intersection of Glenoaks and Foothill, multiple residential development along the remainder of the Foothill frontage, and single-family residential development on the rest of the property in the following fashion:

Appellant made no claim to severance damage. It sought compensation for the portion of the property taken at the rate of $65,000 per acre for the "commercial area," $40,000 per acre for the "multiple residential area," and $22,500 for the "single family residential area."

Respondent's expert witnesses testified to a value of the property taken based upon a "holding use," an investment holding for a period of time until market demand justified development. Those experts assigned a uniform value of $17,000 per acre to all of appellant's land. Respondent offered evidence that after the condemnation of the property and the construction of the freeway, the property remaining to appellant would have a potential commercial and multiple residential use generally as follows:

The newly created commercial and multiple residential uses are projected at a freeway interchange at the southeast corner of the remaining property. Respondent also offered evidence that after the construction of the freeway, the property remaining will have the same general potential for development that it had before the taking.

Appellant objected to the evidence upon the ground of irrelevancy. It argued that no claim of severance damage was made and that the potential of commercial and multiple dwelling uses created by the project tended only to establish a special benefit from the project which could not be offset against the landowner's compensation where severance damage was not claimed. The trial court overruled the objection and permitted the introduction of the proffered evidence. No direct evidence of enhancement in

value of the newly created potential of commercial and multiple dwelling uses was offered.

The trial court instructed the jury that it must value the property as a whole and that: "Value as a part of the whole is not, however, necessarily based upon the average value of the whole. . . . The relative worth of the lands taken, as compared to other parts of the property, should be considered. Therefore, in arriving at the value of the property taken, proper allowances should be made for differences in value if any." The court refused instructions tendered by appellant that it should not use the average method of valuation if it found the property taken to be the most valuable of the whole and that it should award the value of the property taken as a distinct piece of property if that value was higher than its value as part of the whole. The jury returned an award based upon a valuation of $18,000 per acre.

### Issues on Appeal

Appellant contends: (1) the trial court erred in receiving evidence of the potential commercial and multiple residential uses of the remaining property created by the project; and (2) the court erred in refusing its instruction that the property taken should be valued as a distinct parcel if that value were higher than its value as a part of the whole.

### Higher Zone of Value

Code of Civil Procedure section 1248 requires that the trier of fact determine the value of the property sought to be condemned, the severance damage to the property remaining if the condemned property consists of part of a larger parcel, and the value of special benefits to the remaining property. Those benefits, however, may be set off only against severance damage and "shall in no event be deducted from the value of the portion taken." The rule in section 1248 essentially codifies a long-standing rule of determination of compensation in California eminent domain proceedings. (*Contra Costa County Water Dist.* v. *Zuckerman Constr. Co.,* 240 Cal.App.2d 908, 912 [50 Cal.Rptr. 224].) The evidence of potential higher (and hence more valuable) uses of land on the property remaining occasioned by the project is thus irrelevant if it tends only to establish a special benefit because no severance damages are claimed in the case at bench. It is relevant if it goes to the valuation of the property taken. Our problem is to determine whether the former or latter situation prevails in the case at bench.

Two California cases have considered the problem aptly designated the "reestablishment of a higher zone of value on the remainder." (Matteoni,

*The Silveira case and Reestablishment of the Higher Zone of Value on the Remainder* (1969) 20 Hastings L. J. 537.) Unfortunately for our peace of mind, those two cases reach contrary results on very similar facts.

*City of Los Angeles* v. *Allen,* 1 Cal.2d 572 [36 P.2d 611], involves an eminent domain proceeding instituted by the City of Los Angeles to acquire a 33-foot strip of land for the widening of Santa Monica Boulevard. The total parcel consisted of 38.6 acres fronting on Santa Monica for a distance of 800 feet. The property was 2,000 feet deep. The property to a depth of 107 feet from Santa Monica Boulevard was assigned the highest and best use of commercial and appraised at $1.64 per square foot. The rear portion of the property was appraised at 25¢ per square foot. The condemnee contended that it was entitled to be compensated at the rate of $1.64 per square foot, the value directly assignable by the appraisers to the property taken. The trial court awarded compensation at the rate of 32¢ per square foot, the average of the two zones of value. Our Supreme Court affirmed the determination of the trial court. In so doing, it said: "[T]he appellant . . . contend[s] that it is entitled to be awarded the potential value of the strip taken, that is, its value for city lot purposes [$1.64 per square foot] and not as part of the entire acreage. To comply with appellant's request would be to award indirectly to it severance damage when in fact no severance damage exists." (1 Cal.2d 572, 576.) The court rationalized its rejection of the condemnee's argument that the method of computation utilized by the trial court in effect charged it with special benefits when no severance damage was claimed (1 Cal.2d 572, 575) by stating that to award compensation at the rate of $1.64 per square foot for the property taken where the zone of higher use was shifted to the 107 feet adjoining the widened street would unjustly enrich the landowner. (1 Cal.2d 572, 576-577.)

Twenty-one years after the decision of our Supreme Court in *City of Los Angeles* v. *Allen, supra,* a similar issue reached the Court of Appeal of the First District in *People* v. *Silveira,* 236 Cal.App.2d 604 [46 Cal.Rptr. 260]. In *Silveira,* the State Division of Highways condemned a parcel of property along Highway 101 for freeway purposes. The parcel consisted of 9.304 acres and varied in depth from 30 feet at the southerly end to 850 feet at the northerly end. The portion taken was part of a larger 354-acre parcel. Prior to the action, the parcel had highway access at four points. The taking for freeway purposes destroyed that access to Highway 101 and the state was precluded from presenting evidence of a substitute access by a pre-trial order which ruled that the condemner had admitted that all access was taken. The condemnee presented evidence based upon division of the property into various zones of value that the highest and best use of the bulk of property taken which had adjoined Highway 101 was highway commercial. Other

property within the taking was assigned the highest and best use as a part of a subdivision for single and multiple family residences. The highest and best uses assigned the property within the take gave it a higher value than the remaining property in the larger parcel. The trial court instructed that the jury should value the property taken either as a separate parcel or as part of the entire tract, whichever resulted in the greater value. The jury returned a verdict valuing the property separately and taking into account the higher value resulting from the highest and best use as highway commercial. The Court of Appeal affirmed the judgment and hearing was denied in the Supreme Court. The Court of Appeal for the First District expressly approves the earlier decision in *Allen*. It distinguishes *Allen* with the following statements: "In *City of Los Angeles* v. *Allen* on which plaintiff relies . . . [t]here was no evidence of the value which the part taken would have if separately owned and unconnected with the remainder and the parties seemed to have assumed that a piece of land of such slight depth could not have been put to a very valuable use. It was clear, however, that the acreage near the boulevard was more valuable than that remote from it. Accordingly, the referees averaged out the higher values ($1.64) per square foot of the front area with the lower value (25 cents) of the rear area and arrived at an average value (32 cents) per square foot for the entire tract. . . . Since the condemnee in the case claimed no severance damages, the portion of the property not taken under the above method of computation had the same value after the severance. The court therefore properly rejected the condemnee's claim on appeal that the part taken should have been valued at the higher per square foot rule of $1.64 since this would leave the condemnee in possession of more than it had originally and its receipt 'could be justified only if damage resulting to the remaining portion by the severance reduced its value to that extent.' . . . But *Allen* does not stand for the proposition . . . that where the property sought to be condemned is part of a larger parcel, it must in all instances be valued as a part of the whole, despite the fact that it may have a greater value as a separate and distinct piece of property."

There are factual distinctions between *Allen* and *Silveira* not considered significant by the Court of Appeal in the latter case. For example, in *Silveira,* all access to the highway was taken while in *Allen* it was not. We do not consider those distinctions, however, since the denial of hearing in *Silveira* dictates that we seek to reconcile that case with *Allen* on the basis of its decision.

We view the significant disinction to be that in *Allen* the parcel taken was of such a size and shape that it was not susceptible to being valued as a separate and distinct parcel. It was therefore necessary to compute its value as a

portion of a larger piece of property. *Allen* holds that in such a circumstance the larger piece of property must be the entire parcel and not a part of it to which a theoretical value is assigned by the appraisers. Thus the Supreme Court says, "The line between the two portions of the tract [the 107 feet and the remainder] was arbitrarily chosen." (1 Cal.2d 572, 575.) In *Silveira,* the portion taken was of a size and shape susceptible of valuation as a separate parcel. Hence the court could approve a jury instruction that it was to be valued as such if that method of valuation resulted in a greater award.

The distinction between *Allen* and *Silveira,* which we draw here, reconciles the result of the two cases upon the basis of decision used in each. It also treats *Allen* as compatible with the ruling principle that special benefits from the project may not be offset against compensation to the landowner for the value of his land which is condemned. ■ Where the property taken is not of a size and shape which renders it independently usable, it cannot be valued on the basis of the amount that a willing buyer would pay a willing seller for the land taken, for by definition there could not be a willing buyer and seller of unusable land. The property must be valued as a part of a larger whole. In that situation, says *Allen,* the whole of which the condemned property is a part cannot arbitrarily be separated into zones of value where the possibility of those zones is unaffected by the taking. ■ Where, however, the property condemned is of a size and shape that renders it independently usable, it is appropriate to determine what a willing buyer would pay a willing seller for the parcel taken. If the value is so determined, the highest and best use of the parcel taken is critical and the proposition that the project may shift a similar highest and best use to the remainder of the property becomes significant only as a matter of special benefits.

■ In the case at bench, as in *Silveira,* we deal with property condemned which is of a size and shape susceptible to valuation as an independent parcel. We conclude, therefore, that we must be guided by the rule of that case and not by the principle of *Allen.* The rule of *Silveira* renders the evidence to which appellant objected irrelevant and the jury instructions tendered by appellant appropriate. Unquestionably, the improperly received evidence and the refusal of the jury instructions prejudiced appellant. The judgment must therefore be reversed.

Respondent argues that the result for which appellant contends and which we reach here is unfair because the condemnee receives a windfall in the form of an enhanced value in a portion of his remaining land resulting from the creation of a higher use upon it by the project of the same general char-

acter as the highest and best use of the land taken. Thus it argues that the "potential" of the land was not taken. The argument must be rejected. The "unfairness" noted by respondent is that which is always inherent from application of the rule of Code of Civil Procedure section 1248, which precludes the offset of special benefits against the value of the portion of the land taken. Respondent's argument might properly be directed to the Legislature but it is not dispositive of the problem before us. Similarly, the argument ignores that in eminent domain proceedings it is land that is taken and not "potential," and that it is the value of the land that must be determined in the manner dictated by the governing statute.

### Disposition

The judgment is reversed.

Wood, P. J., concurred.

**GUSTAFSON, J.**—I concur in the judgment.

The result of the court's effort to reconcile *Los Angeles* v. *Allen* (1934) 1 Cal.2d 572 [36 P.2d 611] with *People* v. *Silveira* (1965) 236 Cal.App.2d 604 [46 Cal.Rptr. 260] is that when the land taken has a higher unit value than the remainder of the parcel, the landowner is entitled to an award based upon the higher value if the land taken can be sold as a distinct piece of property for a price based upon the higher value, but the landowner is not entitled to an award based upon the higher value if, because of the size or shape of the land taken, the property taken cannot be sold as a distinct piece of property for a price based upon the higher value. I think that such a rule is unfair and that it is not compelled for the reason that *Allen* no longer has vitality.

The Supreme Court in *L.A. County Flood etc. Dist.* v. *McNulty* (1963) 59 Cal.2d 333 [29 Cal.Rptr. 13, 379 P.2d 493] held that "it is not proper to attribute a per-square-foot value to defendants' entire property and then apply the value to the parcel condemned unless each square foot of defendants' land has the same value and that, if the parcel condemned is different in quality from the rest of the land, it should be assigned a different value." There was no limitation confining this rule to a case where the taken property can be sold as a distinct piece of property for a price based upon the higher value. I think that *Allen* was impliedly overruled.

In its petition for rehearing, the condemner asserts that since 1954 it has conceded that a condemnee is entitled to an award based upon the

unit value of the property taken when that property is part of an area having a higher unit value than the balance of the entire property of the condemnee, even though the property taken is of such size or shape that it cannot be sold in the open market for the amount of the award. I agree with the condemner that the court's decision "will be unjust to property owners in situations where small unusable areas are taken."

Suppose that a landowner owns highway frontage of 100 feet with a depth of 500 feet. To a depth of 200 feet the property is usable for commercial purposes and is worth $10 a square foot. The remainder is best suited for residential purposes and is worth $1 per square foot. The entire parcel is worth $230,000 or an average of $4.60 a square foot. To widen a street, a condemner seeks a depth of 2 feet or 200 square feet. The remaining commercial property to a depth of 198 feet retains its value of $10 a square foot so there is no severance damage. The narrow strip being taken would not be saleable on the open market. If by reason of that fact the landowner is entitled to only $920 ($4.60 per square foot), he is left with property of a value of $228,000 and has lost $1,080. Only if he receives $2,000 ($10 per square foot for land worth $10 per square foot) will he be made whole. If the landowner owned only the commercial property and not the residential property, he would unquestionably be entitled to $2,000. The fact that he happens to own the residential property should not penalize him.

A petition for a rehearing was denied January 6, 1971, and the opinion was modified to read as printed above. Respondent's petition for a hearing by the Supreme Court was denied February 3, 1971.