489 P.2d 299

**TUCSON TITLE INSURANCE COMPANY,**
an Arizona corporation, as Trustee in
Trust No. 10,369, et al., Appellants,

v.

**STATE of Arizona ex rel. Justin HERMAN,**
Director, Arizona Highway Department, Appellee.

No. 2 CA–CIV 983.

Court of Appeals of Arizona,
Division 2.

Oct. 12, 1971.

Rehearing Denied Nov. 10, 1971.

Review Denied Dec. 7, 1971.

desert road, known as the Sahuarita Twin Buttes Road cut through the northwest corner of the subject property which was a little under one mile in length and one-half mile in width.

For the construction of Interstate I–19, Tucson-Nogales Highway, a controlled access highway,[1] the plaintiff condemned a strip of land running along the entire length of the western edge of the property. The strip of land contained 17.4 acres and ranged from a width of 145 feet on the south to 293 feet on the north, together with certain drainage easements that were considered by all appraisers to be taken in fee. The length of the strip was 5,130 feet, just under one mile.

All appraisers were of the opinion that the highest and best use of the subject property both before and after the condemnation was for real estate investment purposes.

The appellants' appraiser valued the property in the before situation at $294,800 or $1,000 an acre. He testified that as a result of the take and the construction of the highway, the appellants were damaged in the total sum of $45,130 which consisted of $17,390 for the part taken and severance damages in the sum of $27,740.

The appellee's appraiser valued the entire property in the before situation at $162,140 or $550 per acre. He testified that there were no severance damages.

The jury returned a verdict in favor of the appellants in the sum of $10,440 or $600 per acre and no severance damages.

Appellants claim the trial court erred in the admission of evidence of the value of the part taken, and instructing on the same, and in failing to give appellants' instruction on severance damages.

Stubbs & Stephens, P. C., by Robert C. Stubbs, Tucson, for appellants.

Gary K. Nelson, Atty. Gen., by William E. Kimble, Sp. Asst. Atty. Gen., Tucson, for appellee.

HOWARD, Judge.

Appellants were the owners of 294.8 acres of undeveloped unimproved desert land that abutted El Toro Road on the north. A

## THE VALUE OF THE PART TAKEN

[1] The trial court gave the following instruction over appellants' objection:

"In valuing the property acquired by the State of Arizona, you should:

FIRST, find the value of the entire property, in this case 294.8 acres;

---

1. No roadway previously existed along this route.

SECOND, determine some ratio that the part acquired bears to the whole property;

THIRD, apply that ratio to the value of the whole property to reach a determination of the value of the part taken."

The appellants maintain that the strip of land taken by the appellee should have been valued separately and not as part of the whole. In Defnet Land & Investment Co. v. State ex rel. Herman, 103 Ariz. 388, 442 P.2d 835 (1968), the court recognized that it is prejudicial error to value the land taken on the basis of an artificial average unit value for the entire tract unless the actualities of the case accord with such a method of valuation. It may be that the part taken is the most valuable part of the land and to reduce its value by averaging it with less desirable land would result in awarding the landowner less than just compensation. See 4 Nichols on Eminent Domain, 3rd Ed., § 14.231 p. 545. The predicate to invoking the foregoing rule is a showing that the land being taken has in fact a higher value than the balance of the acreage; for if such a showing is not made the general rule for valuation is that stated in 4 Nichols on Eminent Domain, 3rd Ed., § 14.231, pp. 544–545, quoted with approval by us in Deer Valley Industrial Park Development and Lease Company v. State ex rel. Herman, 5 Ariz.App. 150, 155, 424 P.2d 192, 197 (1967):

"The land taken must be valued as a portion of the tract of which it is a part and not as if it stood alone. This principle is predicated upon the obvious fact that the value of part of a tract is dependent upon its relationship to the remainder of the tract. Ordinarily this relationship gives it a greater value than the value inherent in it as a separate tract. By the same reasoning the value of the remainder is likewise enhanced by consideration of its relationship to the whole tract."

Appellants claim to have laid the proper predicate by showing that (1) there was a demand for "strip" sales in the area at a price higher than the average price per acre of the subject property; (2) the offer of proof showed a separate higher value and (3) the undisputed testimony was that smaller parcels sell for more on a per acre value than larger parcels.

The "strip" sales to which appellants refer were sales to Anaconda Company for a railroad right-of-way and a pipeline. There was no testimony that there existed in the area any market for railroad rights-of-way or pipeline rights-of-way, nor any demand for a piece of land nearly one mile long with a width of 145 to 293 feet. As appellee puts it, there was no showing of a demand for such a piece of land "unless the buyer were looking for a drag strip or a site for a spaghetti factory." There was no showing that *any* of the land in the before situation had any value separate and apart from the whole.

The rejected offer of proof was made by the appellants' attorney. One of his statements was to the effect that if permitted to testify, his appraiser would state that the strip of land taken would have a value independent of the balance of the property " * * * because of its location adjacent to property that had potential subdivision purposes." Appellants explain this vague testimony in their Reply Brief as meaning that their appraiser would have testified that the strip had a higher value because of its potential sale to adjacent property owners. Proof of the use of lands in combination with other lands is admissible in a condemnation case if the possibility of such a connection is reasonably sufficient to affect the market value. United States v. 70.39 Acres of Land, 164 F. Supp. 451 (S.D.Cal.1958). Nowhere in the offer of proof or otherwise was it shown to the trial court that there was a reasonable probability that such a combination of lands would take place. In fact, appellants' own appraiser testified that the high-

est and best use of the *entire* subject property in the "before" situation was for investment purposes. It is only when the strip is considered separate and apart from the whole, as if the whole did not exist, that such a theory is advanced by the appellants. The actualities of the case belie such a theory and the court was entirely correct in rejecting the offer of proof.

■ The contention that the part taken should be valued independently from the whole since smaller parcels sell for more on a per unit basis than larger parcels was advanced in the *Deer Valley* case. We rejected the contention in *Deer Valley* and do so again. There was no showing that the strip had any value separate and apart from the whole. Appellants have not cited to us any authority in point and our independent research reveals that there is none. The value of the land remaining plus damages should equal the value of the land in the before situation. The landowner is entitled to be made whole. He is not entitled to make a profit from the taking as he would under appellants' theory.

## INSTRUCTIONS

■ Appellants claim that the court erred in refusing to give the following instruction to the jury:

"The right of access of an abutting property owner to a street is more extensive than the mere opportunity to go on to the street immediately adjoining the property. The reasonable mode of access would embrace access to the next intersecting street in both directions. Thus, in this particular case the defendants' property has a right of access along Twin Buttes Road to the next intersecting street in either direction, and any impairment of this access by the construction of a limited access interstate highway may be considered by you in determining the severance damages, if any, to the property remaining after the condemnation and the construction of the improvements in the manner proposed."

For the convenience of the reader we include the following diagram of the subject property and environs in the "after" situation.

The route of Sahuarita Twin Buttes Road across the subject property before the taking and the construction of the new controlled access I–19 Tucson-Nogales Highway is illustrated by means of the dotted lines. In the "after situation" Sahuarita Twin Buttes Road stops at the western edge of the subject property.

In the "before situation" Sahuarita Twin Buttes Road ran across the northwest corner of the subject property intersecting approximately 800 feet to the west with Camino Cartegena, a dirt road in a subdivision known as Las Quintas Serenas. Camino Cartegena, in turn, leads to Camino de las Quintas. In both the "before" and "after" situations the subject property is bounded by El Toro Road on the north and has direct access to it. In the "after situation" El Toro Road will pass under the new highway, thus giving the land the same access and mode of travel on El Toro as existed in the "before situation." In an easterly direction El Toro Road connects with the Old Tucson-Nogales Highway.

At the time this action was filed Las Quintas Serenas was partially developed. The authority for the proffered instruction is Bacich v. Board of Control of California, 23 Cal.2d 343, 144 P.2d 818 (1944) which held, inter alia, that the right of access extends in both directions to the next intersecting street. We initially note that this case concerns the liability of the condemning authority when property is placed on a *cul-de-sac*. See also cases cited in 2A Nichols on Eminent Domain, 3rd Ed., § 6.-4443 [3], p. 6–270, n. 25. In the case *sub judice* the subject property is not placed in a cul-de-sac as a result of the taking and the construction of the controlled access highway.

Assuming, *arguendo*, the applicability of the *Bacich* doctrine we find that *Bacich* has been qualified by the California Supreme Court in Breidert v. Southern Pacific Co., 61 Cal.2d 659, 39 Cal.Rptr. 903, 394 P.2d 719 (1964) and Valenta v. County of Los Angeles, 61 Cal.2d 669, 39 Cal.Rptr. 909, 394 P.2d 725 (1964). In *Breidert* the court held:

"In summary, the rule which emerges constitutes one of substantial impairment of the right of access. Although destruction of access to the next intersecting street in one direction constitutes a significant factor in determining whether the landowner is entitled to recovery, it alone cannot justify recovery in the absence of facts which disclose a substantial impairment of access." 39 Cal.Rptr. at 908, 394 P.2d at 724.

And in *Valenta, supra,* the court stated:

"Plaintiffs' first amended complaint, under this test, does not sufficiently allege the necessary showing. As we noted in Breidert the decisions have explained that the court must determine whether the property owner has made a showing of substantial impairment of access; the bare allegation of a cul-de-sac does not suffice. Plaintiffs here have failed to specify the use to which plaintiffs have put their property; the added distance, if any, which they must travel in order to reach the general system of public streets or public highways; the lack of availability of reasonable alternative routes to such general system of public streets or public highways; or, indeed, whether the closing has substantially impaired plaintiffs' right of access to such public streets or public highways." 39 Cal.Rptr. at 912, 394 P.2d at 728.

The suitability of access to property is directly related to the highest and best use of the property. All expert witnesses in the case at bench testified that the highest and best use of the subject property was for investment purposes, which as one witness testified, meant holding it for sale to another. The subject property was vacant. The Las Quintas Serenas subdivision is still accessible by means of El Toro Road.

Considering the facts of this case the El Toro Road route is not unreasonably circuitous and there is no substantial impair-

ment of access. State ex rel. Herman v. Schaffer, 105 Ariz. 478, 467 P.2d 66 (1970).

The court did not err in refusing the instruction, therefore, judgment is affirmed.

KRUCKER, C. J., and HATHAWAY, J., concur.