741 P.2d 292

**STATE of Arizona, ex rel. W.A. ORD-WAY, Director, Department of Transportation, Plaintiff/Appellant,**

v.

**Walter D. BUCHANAN, a divorced man, as his sole and separate property; Marybeth Buchanan, as her sole and separate property; and Yuma County Treasurer, Defendants/Appellees.**

No. CV–86–0228–PR.

Supreme Court of Arizona, En Banc.

July 23, 1987.

Reconsideration Denied Sept. 15, 1987.

Robert K. Corbin, Atty. Gen. by James R. Redpath, Janis M. Haug, Asst. Attys. Gen., Phoenix, for plaintiff/appellant.

Westover, Choules & Shadle by Wade Noble, Yuma, for defendants/appellees.

HOLOHAN, Justice.

The Court of Appeals, Division One, affirmed a judgment awarding defendant Walter Buchanan $110,000 for property taken and $37,500 for severance damages in a condemnation action filed by the State. *State of Arizona ex rel. Ordway v. Buchanan*, 154 Ariz. 155, 741 P.2d 288 (App. 1986). We granted the State's petition for review to address four issues:

1) Did the Court of Appeals err in affirming the trial court's decision to allow the jury to consider evidence valuing the part taken as a separate and distinct unit?

2) Did the Court of Appeals err in affirming the trial court's award of severance damages?

3) Did the Court of Appeals err in rejecting the State's argument that the landowners improperly included non-compensable elements in their testimony regarding valuation and damages?

4) Did the Court of Appeals err in affirming the amount of the answer fee paid by defendants/appellees in the award of costs?

### FACTS

The property taken by the State in this action is an 80' × 330' portion of a five-acre rectangular parcel fronting on 32nd Street (U.S. Highway 80) in Yuma, Arizona. Before the taking the five-acre parcel was flat, undeveloped acreage, physically homogenous throughout, which fronted to the north on 32nd Street, the only means of access to the property. The property was vacant and unused, with no turnouts from the street. To the east was a car dealership and to the west was a K–Mart Store. There were no improvements to the south of the property and no access from that direction.

The parties differed sharply in their approach to valuing the land taken. Buchanan and his expert appraiser testified that the condemned land was capable of being developed and used as an independent unit; thus, Buchanan's evidence of value consisted of sales of land comparable to the size of the parcel actually taken. Buchanan's expert estimated that the value of the land taken was $5 per square foot ($132,070), which also included severance damages. Buchanan estimated the separate value of the land taken as $6 per square foot ($158,484), and he testified that the remaining land had decreased in value from $4 to $3.50 per square foot as a result of the taking, so that approximately $75,000 in severance damages also was due.

In contrast, the State's expert appraiser testified that the land taken was not "a

usable parcel as a separate entity." He assessed the value by considering comparable sales of similar five-acre parcels and applied a value to the part taken as part of the larger parcel. He arrived at a value of $79,200 for the land actually taken. Finding no reduction in the value of the property remaining after the taking, he found no severance damages.

The jury awarded Buchanan $110,000 for the land taken and $37,500 as severance damages. The State filed a timely appeal, contending that the property owner's method of valuation was improper and that there was no competent evidence of severance damage. The Court of Appeals disagreed with the State's position, found the evidence presented at trial competent, and affirmed the judgment of the trial court.

## ANALYSIS

The Arizona Constitution provides that private property cannot be taken or damaged for public use unless just compensation is paid to the owner. Ariz. Const. art. 2, § 17. The legislature has determined that just compensation entails three calculations:

1.  The value of the property sought to be condemned....

2.  If the property sought to be condemned constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned, and the construction of the improvement in the manner proposed by the plaintiff.

3.  How much the portion not sought to be condemned and each estate or interest therein will be benefited separately, if at all, by construction of the improvement proposed by plaintiff [but only up to the amount of severance damages assessed]....

A.R.S. § 12–1122(A)(1)-(3).

I. *Valuation of Land Taken*

The first issue raised by the State concerns the proper method to arrive at the value of the condemned property. The State claims that the trial court should not have allowed the jury to consider evidence valuing the land taken as a separate and distinct unit because the evidence submitted at trial did not support a determination that the part taken had a separate economic use apart from the remainder.

The value of land taken by eminent domain in Arizona is to be determined by the market value of the property: by what a willing buyer would pay for the property and what a willing seller would take. *Defnet Land & Investment Co. v. State ex rel. Herman,* 103 Ariz. 388, 389, 442 P.2d 835, 836 (1968). In determining the market value, the court must consider the highest and best use of the land. *See State ex rel. Morrison v. Jay Six Cattle Co.,* 88 Ariz. 97, 102, 353 P.2d 185, 188 (1960); *County of Maricopa v. Paysnoe,* 83 Ariz. 236, 239, 319 P.2d 995, 997 (1957).

In partial taking cases, generally the land taken is valued as part of the whole tract and not as if it stood alone. *E.g.,* 4A NICHOLS, *THE LAW OF EMINENT DOMAIN* § 14.06, at 14–133 (3d ed. 1985). *Accord Deer Valley Indust. Park Dev. and Lease Co. v. State ex rel. Herman,* 5 Ariz.App. 150, 155, 424 P.2d 192, 197 (1967). Ordinarily this method of valuation gives the part taken—particularly where it is a narrow strip condemned for highway-widening purposes—a greater value. 4A *NICHOLS* § 14.06, at 14–146. The rule protects the condemnee by assuring a just award, because in many cases the part taken would be useless and valueless if considered alone. *People ex rel. Dep't of Public Works v. Silveira,* 236 Cal.App.2d 604, 619, 46 Cal.Rptr. 260, 272 (1965). *See also Arizona State Land Dep't v. State ex rel. Herman,* 113 Ariz. 125, 128, 547 P.2d 479, 482 (1976) (condemned land had no market value standing alone because it was not capable of economic use due to its unusual or irregular size).

However, valuing the part taken as part of the whole is not the exclusive method of valuation in partial taking cases. If the property taken has a market value as a separate and independent economic use and

could therefore command a higher value as a separate entity, this value must be considered without resort to the value of any tract from which it was severed. *Arizona State Land Dep't*, 113 Ariz. at 128, 547 P.2d at 482; 4A *NICHOLS*, § 14.06, at 14–150. The issue can be defined in terms of value in the real estate market:

> Where the property taken is not of a size and shape which renders it independently usable, it cannot be valued on the basis of the amount that a willing buyer would pay a willing seller for the land taken, for by definition there could not be a willing buyer and seller of unusable land. The land must be valued as a part of a larger whole.... Where, however, the property condemned is of a size and shape that renders it independently usable, it is appropriate to determine what a willing buyer would pay a willing seller for the parcel taken.

*People ex rel. Dep't of Pub. Works v. Corporation of President of Church of Jesus Christ of Latter-Day Saints*, 13 Cal. App.3d 371, 379, 91 Cal.Rptr. 532, 537 (1970).

■ In summary, the determination of whether the land taken should be valued separately or as part of the whole is based on a determination of the highest and best use of the land. Where the part taken has a market value based on a separate economic use and commands a higher value as a separate entity than as a part of a larger tract, such value has been allowed. *E.g.*, 4A *NICHOLS* § 14.26, at 14–660. *See also Department of Public Works & Bldgs. v. Oberlaender*, 92 Ill.App.2d 174, 184, 235 N.E.2d 3, 9 (1968); aff'd, 42 Ill.2d 410, 247 N.E.2d 888 (1969). Conversely, the highest and best use of the part taken may be so related to its use with the entire property that the value of the part taken is dependent upon the value of the entire tract. *Id.*

■ The State apparently is arguing that the land cannot be valued as a separate and independent economic unit unless the part taken exhibits physical features that distinguish it in value from the remainder. This position is not supported by case law. In order for the land to be valued as a separate unit, the law requires only that the parcel taken be of a size and shape that is capable of a separate and independent use in the market. *Arizona State Land Dep't*, 113 Ariz. at 128, 547 P.2d at 482. The land taken may have other physical characteristics that add to its value in relationship to the remainder (*i.e.*, land taken is more level, less marshy, etc.), but these characteristics are irrelevant in the initial determination of whether the land taken should be valued separately because it is of a size and shape that is readily marketable.

■ Whether to value the land taken as a separate entity or in relationship to the whole tract is a question of fact to be determined by the jury after hearing competent testimony. *Territory of Hawaii v. Adelmeyer*, 45 Haw. 144, 159, 363 P.2d 979, 986 (1961). *Cf.* 4A *NICHOLS* § 14.26, at 14–649 (question of whether parcels should be considered as one tract in eminent domain proceeding ordinarily is factual question for jury). "[E]ach party is entitled to present his theory of independent or dependent valuation." *Oberlaender*, 92 Ill. App.2d at 184, 235 N.E.2d at 9.

■ In this case, the trial court properly allowed the jury to consider evidence valuing the part taken as a separate and independent economic unit. Because the question was a valid question of fact, the defendant was entitled to present his theory of valuation to the jury. The State argues that the evidence presented by Buchanan was inconsistent and inconclusive. Buchanan's expert appraiser testified that the land taken was capable of being used independently for some use, possibly a gas station, although earlier he also testified that it was not probable that the land taken had an independent value by itself in the market. His testimony about sales of comparable property included parcels with similar square footage to the property taken but with greater depth than the 80 feet depth of the property taken. The comparable parcels to which he testified ranged in size from somewhat less than 19,000 square feet to over 50,000 square feet, but all of them were at least 150 feet deep.

The State's expert testified that the property taken was "probably usable," but that it was "not a rational, marketable size property in this market" because of the frontage-to-depth ratio. Essentially, the State's expert agreed that the square footage of the property was sufficient to support an independent use, but questioned its usability because of the shape of the land taken.

The various inconsistencies in the evidence noted by the State apply to the weight to be given to the evidence. There was sufficient basis for the trial court to admit evidence on the value of the parcel taken as a separate and independent unit. It was for the jury to determine the weight to be given to the evidence. *See Stearman v. Miranda,* 97 Ariz. 55, 57, 396 P.2d 622, 623 (1964).[1]

## II. *Severance Damages*

The State argues that severance damages are improper where the land taken is valued as a separate and independent economic unit because the two concepts are mutually exclusive. In any event, the State claims that Buchanan failed to adequately prove severance damages in this case.

■ Severance damages are proper when the land condemned is part of a larger parcel. A.R.S. § 12–1122(A). The measure of severance damages is the difference between the market value of the remainder before and after the taking. *Pima County v. DeConcini,* 79 Ariz. 154, 157, 285 P.2d 609, 611 (1955); *City of Scottsdale v. Church of the Holy Cross Lutheran,* 132 Ariz. 416, 419, 646 P.2d 301, 304 (App.1982). As with valuation of the part taken, the market value of the remainder is determined by ascertaining what the property would bring on the open market assuming there is a willing buyer and a willing seller. *City of Scottsdale,* 132 Ariz. at 419, 646 P.2d at 304. The condemnee has the burden of proving severance damages. *American Savings Life*

*Ins. Co. v. State ex rel. Herman,* 13 Ariz. App. 336, 339, 476 P.2d 680, 683 (1970).

■ A major concern in assessing severance damages is to ensure that the landowner not be awarded "double compensation" for losses that already have been included in the award for the land actually taken. Using the proper valuation process, severance damages may be appropriate even though the part taken is valued as a separate unit. In a partial taking where the land *taken* is valued separately, severance damages to the *remainder* also should be determined by considering only the before and after value of the remaining property as a separate unit and not its value as a part of the larger parcel. *See Silveira,* 236 Cal.App.2d at 619, 46 Cal. Rptr. at 271. Thus, the before value of the remainder should not be dependent in any way upon the remainder's use as a part of the larger parcel. This method of valuation will protect against duplicative damage awards where the land taken is valued as a separate unit.

■ It is axiomatic that a party must be consistent in the valuation method it utilizes for valuing both the part taken and the severance damages to the remainder. A party is not precluded from arguing the "whole parcel" and "separate unit" values as alternative theories. However, he cannot attempt to combine the methods and value the land taken separately but then consider the remainder as part of the larger parcel for the determination of severance damages.

■ At trial, Buchanan and his expert testified that the land taken should be valued as a separate and independent economic unit, and they gave an estimate of value for the part taken based on that method of valuation. Thus, Buchanan elected to rely solely on the "separate use" method of valuation, without arguing the "whole parcel" method in the alternative. Hence, in determining severance damages Buchanan should have been limited to presenting evidence of the value of the remainder as a

---

**1.** As the form of the jury's verdict was a general verdict and since the jury's award did not match any of the values proffered by the expert appraisers at trial, we cannot tell what method of valuation the jury utilized in determining the value of the land taken.

separate unit both before and after the taking. Any other evidence about the value of the remainder after the taking was inconsistent with Buchanan's theory of valuation. Such evidence should have been excluded by the trial court.

██ Buchanan's claim for severance damages was based on 1) damage to the remainder resulting from the inability to develop the front in conjunction with the back of the property (underutilization); 2) reduced visibility as a result of being set back 80 feet from the main street; and 3) damages caused by altered traffic flow as a result of the change in the street on the land taken. All of these claimed damages are relevant only if the "whole parcel" method of valuation is used. Buchanan chose to value the parcel taken as a separate unit. The value of that separate unit included its frontage, its access to traffic flow, and its ability to be developed separate and apart from the rest of the parcel.

██ Under the "separate use" method of valuation, neither the utilization of the remainder, its visibility from the road, nor the traffic flow around it were affected by the taking. Viewed as a separate parcel, the remainder could not be used in conjunction with the condemned land before the taking. Consequently, the ways in which the remainder could be used did not change after the taking. Similarly, visibility was not affected by the taking. Before the taking, the northern boundary of the remainder was 80 feet from the main street. After the taking the visibility of the remainder was unaffected—the boundary was still 80 feet back from the main road. If anything, the visibility of the remainder was enhanced by the taking because the frontage road brought traffic closer to the remainder. Finally, in this case the remainder, considered as a separate unit, had no traffic flow in front of it before the taking. After the taking, the frontage road bordered the remainder so that the remainder actually benefitted from in-creased traffic flow as a result. Regardless, severance damages are never allowed simply for altered traffic flow. *See Rayburn v. State ex rel. Willey*, 93 Ariz. 54, 378 P.2d 496 (1963). *Accord State ex rel. Herman v. Schaffer*, 105 Ariz. 478, 467 P.2d 66 (1970).

Just before the jury was charged, the State made a motion to strike the testimony as to severance damages given by Buchanan and his expert. The trial court erred in denying the motion. There was no basis for submitting the issue of severance damages to the jury.

### III. *Testimony of Non-Compensable Matters by the Owner*

██ The Court of Appeals ruled that the State abandoned its argument that the trial court erred in allowing Buchanan to testify as to noncompensable matters. An issue is abandoned when an appellant fails "to state with any particularity why or how the trial court erred in making these rulings and simply concludes that error was committed." *Modular Systems, Inc. v. Naisbitt*, 114 Ariz. 582, 587, 562 P.2d 1080, 1085 (App.1977) (citing *Brockmueller v. State*, 86 Ariz. 82, 340 P.2d 992 (1959)). In its brief to the Court of Appeals, the State asserted that "a landowner's opinion testimony should be stricken when it is based upon *non* compensable elements of damage" (emphasis in original). However, the State never stated what the noncompensable elements were. The Court of Appeals correctly ruled that the State failed to express with any particularity how or why the trial court erred in admitting the testimony into evidence. The issue was abandoned.[2]

### IV. *Taxable Costs*

██ The State claims that the answer fee Buchanan paid to the court was not recoverable as a taxable cost. A.R.S. § 12–345 states that no court costs shall be charged against the State. We long ago

---

2. In its reply brief in the Court of Appeals, the State made a vague assertion that Buchanan failed to use a proper method in figuring severance damages. If this was the State's assign-ment of error to the trial court on this issue, it is resolved by our earlier analysis of the severance damage issue.

**166**

interpreted this statute to apply "only to payments by the specified governmental bodies and officials into the court or to the officers thereof as ordinary litigants make such payments, but it does not apply to a recovery of the taxable court costs incurred by a successful litigant against such officials and bodies." *Hammons v. Waite*, 30 Ariz. 392, 395–96, 247 P. 799, 801 (1926). *See also City of Phoenix v. Kenly*, 21 Ariz.App. 394, 397, 519 P.2d 1159, 1161–62 (1974). Here the answer fee paid by Buchanan was a "taxable court cost incurred by a successful litigant" against the State. The State must pay the answer fee.

### CONCLUSION

The opinion of the Court of Appeals is modified by vacating that portion affirming the award of severance damages. The judgment of the superior court awarding an amount for severance damages is reversed. The judgment for the value of the parcel taken is affirmed.

GORDON, C.J., and CAMERON, J., concurs.

MOELLER, J., did not participate in the determination of this matter.

FELDMAN, Vice Chief Justice, dissenting.

I dissent from the portion of the court's opinion dealing with the "valuation of land taken." At 162–164, 741 P.2d at 295–297.

The court holds that the strip taken may be valued as a separate, independent parcel with a highest and best use for gas station or fast food outlet purposes. In so doing, the court violates the concept of "just compensation" as defined in a series of well-reasoned Arizona cases and adopts a system of valuation supported by neither logic nor common sense.

The object of the valuation process in eminent domain is to make the owner whole, not to permit him to make a profit from the condemnation proceedings. *Defnet Land & Investment Co. v. State ex rel. Herman*, 103 Ariz. 388, 389, 442 P.2d 835, 836 (1968); *Tucson Title Insurance Co. v.*

*State ex rel. Herman*, 15 Ariz.App. 452, 455, 489 P.2d 299, 302 (1971). Obviously, the value of the land after the taking plus damages should equal the value of the land before condemnation. *Id.* Under the facts of this case, valuing the land taken as if it had a special commercial use not shared by the rest of the property compensates the landowner for something that was never taken and for rights that the owner still possesses.

Buchanan owned a five-acre rectangular tract with 330 feet fronting on 32nd Street in Yuma. As acknowledged by the majority, "the five-acre parcel was flat, undeveloped acreage, physically homogenous throughout." At 161, 741 P.2d at 294. The state took a strip of land 80 feet deep to widen 32nd Street. Thus, before the condemnation, Buchanan had 330 feet of frontage on 32nd Street with a depth of approximately 560 feet. After the taking, he still will have 330 feet of frontage on 32nd Street but with a depth of approximately 480 feet. According to Buchanan's appraiser, a 330 foot by 80 foot parcel *with frontage rights* was suitable for use for strip retail businesses and therefore was worth $5.00 per square foot. This, he said, was a higher square footage value than the average value of the entire homogeneous parcel. This so-called theory was allowed to go to the jury. As a result of the majority's affirmance, the state will pay Buchanan the "value" of his frontage rights.

What the majority overlooks, however, is that no frontage rights were taken. After the taking, Buchanan still will have 330 feet of frontage on 32nd Street. That frontage still will have the same use which Buchanan claims was acquired by the state. Where is the logic in paying the owner for commercial frontage retained by the owner? The majority argues that the strip taken had an independent value if sold on the market. They are wrong. What Buchanan "sold" to the state is much different than what he would have sold on the market. If Buchanan had sold the same strip of land to a private buyer for $5.00 per square foot, he would have conveyed

his frontage rights and there would be a private owner between his remaining property and 32nd Street. In contrast, the strip that the state condemned was not frontage, it was only part of a tract of land that had, and still has, frontage on 32nd Street. By the magic of the majority's valuation process, Buchanan has been paid for the taking of valuable commercial frontage, but still has the same frontage and will profit from the same commercial value.

Such a result defies common sense and is directly contrary to well-established Arizona law.

> "[I]n the ordinary highway widening situation the right of access is not taken by the condemnation and the front portion is not devoted to a use that impairs the access of the back portion—on the contrary, it is converted to a use which leaves all of the right of access attaching to the back portion...."

> So, in a street-widening case, if one considers the front portion taken as a separate entity, with full access rights to the street, and the rear portion as a separate entity, with full access rights to the street, we are considering nonexistent things. Hence [in cases that recognize such theories] it is no wonder that juries are presented with such variations in testimony that it is difficult to comprehend that the testifiers purport to be members of a common profession. Tremendous variations in verdicts thus result, making eminent domain litigation an attractive game of chance for those armed with the more imaginative and persuasive professional witnesses.

*Deer Valley Industrial Park Development & Lease Co. v. State ex rel. Herman,* 5 Ariz.App. 150, 156, 424 P.2d 192, 198 (1967) (quoting *Frenel v. Commonwealth Department of Highways,* 361 S.W.2d 280, 282 (Ky.1962)).

In *Deer Valley,* the court held that the so-called frontage taken from a parcel abutting a street-widening project had no special value as such and must be valued as part of the whole, unless the part taken had some special physical feature that actually gave it a special value. *Deer Valley* teaches—as logic requires—that when a strip of land is taken for street widening and frontage rights are not disturbed, it makes no difference whether the land is taken from the front or the rear of the parcel; the practical effect is only that the lot is reduced in depth. Land may be taken along the "front," but no frontage is actually taken.[1]

This view is supported by well-established precedent and by the leading commentator. *E.g., Defnet,* 103 Ariz. at 390, 442 P.2d at 837 ("ordinarily in a tract of this size the [land] to the rear would be promoted to frontage ... and thus there would be no actual loss in commercial acres"); *City of Los Angeles v. Allen,* 1 Cal.2d 572, 36 P.2d 611 (1934);[2] *In re Fourth Avenue in City of New York,* 255 N.Y. 25, 173 N.E. 910 (1930), *cert. denied,* 283 U.S. 860, 51 S.Ct. 653, 75 L.Ed. 1465 (1931); *City of Grand Rapids v. Barth,* 248 Mich. 13, 226 N.W. 690 (1929); *Frenel, supra;* 5 J. SACKMAN, NICHOLS, THE LAW OF EMINENT DOMAIN § 16.1012 (rev. 3rd ed 1985 and Supp.1987) (summarizing partial takings cases). *See generally* Annot., 64 A.L.R. 1513 (1930).

Until today, this court has recognized that it is only when the part taken " 'is the most valuable part of the tract considered from a *qualitative* point of view' " that it should be valued at a separate, higher figure. *Defnet,* 103 Ariz. at 390, 442 P.2d at 837 (quoting 4 NICHOLS, EMINENT DO-

---

1. This can be illustrated easily by simply switching the location of the taking in this case. Suppose, for instance, that the city had widened the noncommercial street in back of the parcel and taken a strip 330 feet by 80 feet. Certainly the strip taken would not have been valueless simply because it had no frontage rights. The fact of the matter is that it had as much frontage rights as any other part of the parcel—it shared in the overall value resulting from those rights. There is no difference in value of the part taken, whether the city takes the widening strip from the front or the rear. In either case, the landowner has lost no commercial frontage.

2. The California statutory provisions under which *Allen* was decided are the origin of our own statutes. *See* A.R.S. § 12–1122 (historical note); *Deer Valley,* 5 Ariz.App. at 156, 424 P.2d at 198.

MAIN § 14.231, at 545 (3rd ed.)) (emphasis added). Indeed, even the case cited by the majority to support its valuation theory, *Arizona State Land Department v. State ex rel. Herman,* 113 Ariz. 125, 547 P.2d 479 (1976), does not stand for the proposition that part of a homogeneous tract under common ownership may be valued separately from the rest of the tract. In an opinion written by the author of today's decision, it holds that computing the ratio of the part taken to the value of the entire tract

> requires that the part taken be compared to the remaining tract in order to identify whether the two units of land contain any distinctly different qualities, *e.g.,* [physical] characteristics, which may result in the part taken having a greater or smaller per [unit] value than the part not taken. [citing cases] ... The value of the part taken may then be determined by applying this ratio to the value of the entire tract.

113 Ariz. at 129, 547 P.2d at 483. In 1987, the majority has changed what it said was good law in 1976. It should at least tell us why the law has changed.

According to logic and precedent, the property taken in this case should not have been valued separately. It is part of a homogeneous piece; there is no qualitative difference between it and the rest of the parcel; and no frontage rights have been taken by the state or lost by the owner. Buchanan is being paid for something that was not taken.

I dissent.