[Civil No. 3045. Filed November 4, 1931.]

[4 Pac. (2d) 665.]

ELTON E. WELLER and ADALINE WELLER, His Wife, Appellants, v. CITY OF PHOENIX, Appellee.

Mr. John W. Ray, for Appellants.

Mr. Charles A. Carson, Jr., City Attorney, Messrs. Kibbey, Bennett, Gust, Smith & Rosenfeld and Mr. James E. Nelson, for Appellee.

LOCKWOOD, J. — Elton E. Weller and Adaline Weller, his wife, hereinafter called plaintiffs, brought suit against the city of Phoenix, hereinafter called defendant, seeking to enjoin the latter from assessing against plaintiffs' homestead any of the costs of certain paving improvements ordered by defendant to be constructed on a portion of Thirteenth Street, between Harrison and Van Buren. Defendant demurred to the complaint, which demurrer was by the court sustained, and, plaintiffs standing on the complaint, judgment was rendered in favor of defendant. From the judgment, this appeal has been taken.

There is but one question necessary for us to determine, and that is whether as a matter of law a homestead duly selected and declared under the provisions of chapter 33, Revised Code of 1928 (sections 1731–1739), is subject to a lien for paving costs assessed under article 16 of chapter 12, Revised Code of 1928 (sections 511–550), which provides for the making of public improvements by special assessments. A similar question has been before the courts of a number of states, and with one exception the

150

uniform holding has been that homesteads are subject to such special assessments. *Perine* v. *Forbush,* 97 Cal. 305, 32 Pac. 226; *Nevin* v. *Allen,* 15 Ky. Law Rep. 836, 26 S. W. 180; *Todd* v. *Atchison,* 9 Kan. App. 251, 59 Pac. 676; *Patterson* v. *Wallace,* 47 Okl. 267, L. R. A. 1915E 662, 147 Pac. 1034; *Reed* v. *Athens,* 146 Tenn. 168, 240 S. W. 439; *Shibley* v. *Ft. Smith, etc.,* 96 Ark. 410, 132 S. W. 444.

The sole exception is found in the state of Texas. *Higgins* v. *Bordages,* 88 Tex. 458, 53 Am. St. Rep. 770, 31 S. W. 52, 803.

Homesteads and paving assessments are always creatures of constitutional or statutory provisions, and not of common law, and the language of the Constitutions and statutes governing them varies in each state. We think, however, the California law, while not identical with ours, is nearer thereto than that of any other state. Article 17, paragraph 1, of the Constitution of California provides that "the Legislature shall protect, by law, from forced sale, a certain portion of homestead and other property of all heads of families."

In pursuance of such constitutional mandate, the legislature adopted a homestead statute (Civ. Code Cal., § 1237 et seq.) defining what the homestead should consist of, and providing that it should be "exempt from execution or forced sale, except as in this title provided." Section 1240. The statute then enumerates certain classes of judgments under which the homestead is subject to execution and forced sale, but does not expressly mention either taxes or special assessments as one of them. Notwithstanding this, the Supreme Court of California held that special assessments under the Vrooman Act (Stats. 1885, p. 147, as amended), from which our paving law was undoubtedly taken, were a lien on the homestead, and could be enforced by the sale thereof. *Perine* v. *For-*

*bush, supra.* But since our homestead and paving statutes, although more like those of California than any other state, are not identical therewith, we discuss the case from the standpoint of our own statutes, as interpreted in the light of logic, as well as from the weight of authority.

The first thing we note is that there is no reference whatever in our Constitution to homesteads, and the only provision regarding special assessments is section 6 of article 9, which reads as follows:

"Incorporated cities, towns, and villages may be vested by law with power to make local improvements by special assessments, or by special taxation of property benefited. For all corporate purposes, all municipal corporations may be vested with authority to assess and collect taxes."

If a "special assessment" is a "tax" in the ordinary sense of the term, there is no question that homesteads are subject thereto, for under section 2 of article 9 of the Constitution, all property in the state not specifically exempted under the provisions of such section is expressly made subject to taxation, and it contains no reference to homesteads. It is urged, however, that the special assessment in question is not a "tax" within the constitutional provision last mentioned. In practice, and as generally understood, there is a clear distinction between the two terms. Taxes are generally held to be burdens or impositions laid for purposes of general revenue, regardless of the direct benefit accruing to the person or property taxed, while assessments are special and local impositions on property, made for a public purpose, but fixed in amount with reference to the *special benefit which such property derives from the expenditure. Illinois Central R. Co.* v. *Decatur,* 147 U. S. 190, 37 L. Ed. 132, 13 Sup. Ct. Rep. 293.

And such special assessments are frequently held not to be within constitutional or statutory provisions

referring to general taxation only. Nevertheless, they can only be sustained by virtue of the general taxing power of the government, and in that sense, at least, resemble a tax. The question then is, Was it the intent of the legislature that a homestead should be exempt from a special assessment, although subject to general taxes?

It is the universal rule that a claim of exemption from taxation by virtue of a statute is construed *strictissimi juris,* and exemption must be granted in terms too plain to be mistaken. This is invariably held in regard to general taxation. *Philadelphia etc. R. Co.* v. *Maryland,* 10 How. 376, 13 L. Ed. 461; 26 R. C. L., p. 313.

And it would seem but reasonable that, although special assessments are not taxes in the strictest sense of the word, since they rest solely on an exercise of the taxing power, the same rule should apply.

The homestead act existed in its original form many years before the adoption of the Paving Code of 1912, and it has come down practically unmodified in substance, though slightly changed in language, since 1887. The Paving Code, as it now exists, was originally taken from the Vrooman Act of California in 1912. Section 518, Revised Code of 1928, which is part of that Code, provides for certain property being exempt from the costs of improvement. It is but reasonable to presume that since the legislature obviously had in mind the general subject of exemption from paving assessments, had it intended to exempt homesteads, or indeed, any other property except that specifically mentioned, it would so have stated. The old rule of *expressio unius est exclusio alterius* is persuasive on this point. Further, as a matter of public policy, the uncertainty which would be introduced into the law, should homesteads and similar classes of property be exempt from special

assessment, is an additional reason why, in the absence of an unmistakable expression of an intent to the contrary on the part of the legislature, we should hold them to be subject to a lien for such improvements. Under our law, exemption of a homestead from a lien is not affected by the time of declaration, whether before or after the judgment was obtained, so long as the property has not actually been sold by virtue thereof. When local assessments are made under the statute, the cost is immediately assessed to the different lots, and collected in most cases over a period of many years. If homesteads are exempt therefrom, when the assessment is first made, the burden will be distributed and obligations assumed in accordance with the situation as it apparently exists at that time. But since at any time thereafter any of the present owners or subsequent purchasers of any of the property included within the assessment district may, by the declaration of a homestead, exempt their property from the paving lien, either there must be, with each declaration, a reassessment of the remaining property owners of the district to pay the difference, or else the improvement bonds based on the exempt property will be valueless. Such a situation would introduce an intolerable uncertainty regarding the value of improvement bonds, so that it would be utterly impossible to dispose of them, and the paving act would be practically unworkable. Were the law in Arizona as it is in some states, to the effect that all liens attaching *before* the declaration of a homestead should be valid, notwithstanding a subsequent declaration, it would at least remove the uncertainty.

But even then, there is another reason why in reason homesteads and similar property should be subject to special assessments even more than they are to general taxation. As we have said, in general

taxation a burden is placed upon all property owners for the support of the government in proportion to the value of their property, regardless of how much direct or indirect benefit they or their property may receive from the expenditure of the taxes, while with the special assessment, the burden is placed directly in proportion to the *actual benefit received by the property assessed,* and presumably the increased value will pay for the assessment. And it is only justice that property which receives a benefit should pay therefor.

In view of these reasons, and the absence of specific constitutional or statutory provisions that homesteads are exempt from special assessments, we think they are subject thereto, as well as to general taxation. The judgment of the superior court of Maricopa county is affirmed.

McALISTER, C. J., and ROSS, J., concur.