505 P.2d 253

**CITY OF TUCSON, a municipal corporation, Appellant,**

v.

**Eugene C. RICKLES and Mildred Rickles, husband and wife, Appellees.**

**No. 10629-PR.**

Supreme Court of Arizona,
In Banc.
Jan. 8, 1973.

Herbert E. Williams, City Atty., J. Dan O'Neill, Asst. City Atty., Tucson, for appellant.

Stubbs & Stephens, P. C., by Robert C. Stubbs, Tucson, for appellees.

LOCKWOOD, Justice.

In October of 1967, the City of Tucson sued to condemn a 15 by 580 foot strip of

land which was needed in order to widen Prince Road on the west side of Tucson. The land had been part of a mobile home park owned by Eugene and Mildred Rickles. In January, 1970, the case was tried without a jury. The trial court entered a judgment condemning the land and awarding the Rickles damages for the land and improvements taken and for severance damages to the remaining uncondemned land.

The City appealed, presenting two questions for review:

"(1) In a partial taking under eminent domain, is it proper to measure the value of the part taken by a standard other than the value of the land taken and the value of the improvements located within the taking?

"(2) In an eminent domain action, is evidence of an improvement district assessment and the amount and alleged effect thereof, properly admissible?"

The Court of Appeals reversed the judgment of the trial court, City of Tucson v. Rickles, 15 Ariz.App. 244, 488 P.2d 180 (1971). A petition for review was filed and subsequently granted by this Court. The opinion of the Court of Appeals is vacated.

The valuation formula suggested at trial by Mrs. Rickles and her appraiser was unique. It urged that when assessing compensation for the land and improvements taken, the trial court should first compute an initial figure representing the total value of the entire park in the "before" situation—including the land, trailer foundation slabs, trees, shrubs and other improvements, permanent office building, swimming pool, well, laundry, and recreation facilities. Because there were 85 trailer sites on the park i· the "before" situation, the Rickles' formula provided that the figure representing the total "before" valuation be divided by 85—to arrive at a "per site" value. And finally, because Mrs. Rickles testified that "from [her] own observations" the condemnation had taken six sites from the park, the Rickles' formula

required that the per site value figure be multiplied by six; the final figure would assertedly be the value of the land and improvements taken.

The City's valuation formula suggested that the court find an average per square foot value of the total trailer park land in its "before" situation. Because the area condemned was composed of 8,718 square feet of land, the City's formula recommended that the per square foot value be multiplied by 8,718 to arrive at a suggested value for the *land* taken. Concerning the *improvements* taken, the City's appraiser testified as to the value of the four concrete foundation slabs and the other improvements which lay partially or entirely within the area taken and which presumably had been taken or rendered useless because of the condemnation. The separate values of the land and the improvements taken were then supposed to be added.

Not surprisingly, the ultimate figures proposed by the Rickles and by the City varied substantially concerning the true market value of the land and improvements taken. The Rickles sought $18,000, while the City urged that the actual damages amounted to $8,031.

We reject both methods of obtaining the true market value of the land and improvements taken. Section 9–610, A.R.S. sets forth the measure of damages.

On April 27, 1970, at the conclusion of the trial, the court approved and signed an instrument propounded by the attorney for the Rickles and entitled "Amended Proposed Findings of Fact and Conclusions of Law." The findings stated, *inter alia*, that as a result of the taking of 15 feet for the widening of Prince Road, the plaintiff, City, acquired *six trailer sites*, maturing landscaping, and other miscellaneous improvements. The court further found that "[t]he value of the land and improvements actually taken was the sum of $15,-600.00," and that the bulk of the Rickles' property which the City had not sought to condemn had suffered "the sum of $15,-

000" severance damages due to the street widening and as a result of the *"imposition of [municipal] street [improvement] assessments."*

The first question raised by the City requires us to review the entire procedure used by the trial court to assess damages for the land and improvements taken.

## VALUATION OF THE LAND AND IMPROVEMENTS TAKEN

Counsel have cited no authorities discussing the valuation of trailer parks, nor are we able to find many cases. We must therefore approach the question by following the basic guidelines of our Constitution and statutes. The Constitution of Arizona, art. 2, § 17 (1970), A.R.S., requires that where private property is taken for public use, just compensation must be paid to the aggrieved landowner. A.R.S. § 9–606 (1956) provides that: "The action shall be governed by the law of eminent domain, except as otherwise provided."

After careful reading and study of the record, we are of the opinion that the only reasonable interpretation of the record, the judgment, and the verdict is that the trial court adopted the Rickles' "per site" valuation formula. The clearest indicator of this fact is the express Finding of Fact that "six sites" were "acquired" by the City. Practically all the evidence offered throughout the trial by the Rickles was based upon the court's adoption of a per site valuation formula. The evidence offered by the City was equally strong in its opposition to such a technique. The size of the verdict also indicates that the court must have chosen the Rickles' formula.

The Rickles' per site valuation formula was improper as a matter of law. Not only was it an unrecognized method of assessing market value, but it resulted in an award of damages which was based upon speculation and assumptions which were not justified by the evidence. See Board of Regents v. Cannon, 86 Ariz. 176, 342 P.2d 207 (1959).

While condemnation proceedings are generally based on A.R.S. § 12–1122 (1956), "Opening, Widening and Closing Public Ways" by cities or towns are governed by A.R.S. § 9–606 (1956), which specifically states that "[t]he action shall be governed by the law of eminent domain, *except as otherwise provided."*

The language of A.R.S. § 9–610, subsec. B (1956) contemplates that in Arizona damages for land and improvements taken by condemnation for an improvement district (as were the Rickles' land and improvements) should be assessed with a certain degree of specificity, not by generalization. The formula offered by the Rickles simply did not take into account all of the facts existing with respect to the trailer park in its "before" and "after" situations. For example, the City did not condemn "six trailer sites," as assumed by the trailer court. Rather, the exhibits and other evidence show that the condemned strip of land probably included within its boundaries *portions* of eight trailer sites. Further, there was no significant evidence during the trial to justify the trial court in assuming that the amount of square feet within the strip of land taken would approximate the amount of square feet constituting any six trailer sites in the "before" situation.

The land taken did not consist entirely of trailer site ground. *Other* types of land were also included in the condemned strip, to wit: portions of several streets and alleys and one portion of the common recreation area. The "per site" valuation formula obviously did not take into consideration these facts. Similarly, there was testimony at trial that the Rickles charged more rent for trailer sites with large concrete foundation slabs than for sites which contained slabs of smaller dimensions. This fact was likewise ignored in the "per site" valuation formula, which assigned an equal value to each of the 85 trailer sites in the park.

As a further example of the faults of the Rickles' "per site" valuation formula,

the award of damages for "six sites," despite the fact that none of those six sites were taken in toto, necessarily included damages for the *loss of use* of the remaining (uncondemned) portions of those six trailer sites. Such an award constituted *severance* damages and therefore should not have been included within the award of damages for the land and improvements taken.

Finally we observe that by assigning to each of the 85 trailer sites an equal value representing ⅟₈₅th of the value of the entire trailer park land and improvements in the "before" situation, the "per site" formula included, in the value of the six sites allegedly taken, a proportionate amount of the value of the permanent improvements lying on the uncondemned portion of the park—i. e., the swimming pool, office, laundry, well, and recreation facilities. While most of those permanent improvements were not directly rent-or-profit-generating it would be error to assume, as the Rickles did, that these improvements therefore had no inherent market value of their own separate and apart from the value of the trailer sites, and that they could thus be compensated for in the instant award of damages, despite the fact that they were obviously not taken by the City.

■ Admittedly the valuation of a portion of a trailer park must be a difficult task. But that fact is not sufficient justification for abandoning the requirement of our Constitution and statutes that a landowner receive reasonable compensation, nor is it sufficient justification for abandoning the assessment of damages as carefully and specifically as possible under the circumstances. It is our opinion that in ascertaining damages, all facts must be considered. "[R]emote and speculative damages [should be] disregarded * * *." *Arizona Water Co. v. City of Yuma,* 7 Ariz.App. 53, at 58, 436 P.2d 147, at 152 (1968); 1 L. Orgel, Valuation Under the Law of Eminent Domain § 59 (2d ed. 1953).

Games of "let's pretend," Id., § 57 at 266, should play no part in condemnation cases.

We find it difficult at this juncture to state that one particular mode of assessing the market value of the land and improvements taken would have been superior to all others. There are probably several techniques which would have been adequate. A procedure which might have been used, but which neither the Rickles' nor the City's formula adequately pursued is a combination of three well-accepted approaches—prior sales, capitalization of rental income, and reproduction (or rearrangement) costs less depreciation. See L. Howard, Trial Handbook—Law of Eminent Domain in Arizona §§ 2.8–2.10 (1967). We see no reason why these approaches could not be used to value with some greater degree of specificity the strip of land and improvements taken from the Rickles' trailer park. Of course, the trial court would have to hear additional evidence pursuant to each of these approaches including evidence of the per square foot values of $30 per month trailer sites, $27.50 per month trailer sites, $25 per month trailer sites, and the possibility and costs of rearranging or modifying the trailer sites and the trailer foundation slabs on the six sites allegedly taken. This latter factor might have significantly affected the market value of the remaining land subsequent to the taking, and therefore the amount of severance damages. See L. Howard, supra, § 2.8 at 15.

■ We realize that value and damages in condemnation proceedings sometimes are not susceptible of precise proof, and in many cases can only be approximately shown. State ex rel. State Highway Comm'n. v. Grissom, 439 S.W.2d 13 (Mo.App.1969). But the *method* used to arrive at that award in this case was unquestionably improper. It is implicit in our Constitution and statutes, which require that an aggrieved landowner receive "just" compensation, that there be at least an attempt to use a reasonably accurate and realistic method of valuation. This court

has previously held that an award of damages must be arrived at through a recognized method which cannot be fundamentally unfair and unjust. See Defnet Land & Investment Co. v. State, 103 Ariz. 388, 442 P.2d 835 (1968); Board of Regents v. Cannon, supra. In the instant case the evidence presented at trial was clearly insufficient to justify an award under any reasonably realistic method of valuation.

### ADMISSIBILITY OF ASSESSMENT EVIDENCE

During the trial of the instant case, Mrs. Rickles and the Rickles' expert appraisal witness were allowed to testify, over the City's objection, that on February 22, 1969, municipal street improvement assessments totaling $5,505.79 had been levied by the City upon the Rickles' property in connection with the same road widening project which had occasioned the taking of the Rickles' land.

The purpose of improvement assessments is to finance public works. To allow municipalities to levy and collect assessments but then to require them to pay out awards of severance damages which are inflated in the amount of those very same assessments would impair the constitutional right of municipalities to assess landowners and to thereby help finance needed city improvements. Assessments are similar to an exercise of the power of taxation. Weller v. City of Phoenix, 39 Ariz. 148, 4 P.2d 665 (1931).

> "Taxes [and therefore assessments] are the life blood of government and no taxpayer should be permitted to escape the payment of his just share of the burden of contributing thereto. * * * Any procedure which would permit avoidance of such taxes when a substantial basis therefor exists is inequitable." In re New York State Realty & Terminal Co., 21 N.J. 90, at 96, 121 A.2d 21, at 24 (1956).

The Legislature recognizing this principle enacted A.R.S. § 9–610, subsec. B in which it is specifically provided that:

> "B. The referees, the court or the jury, shall find separately the value of each parcel of property sought to be condemned, and all improvements thereon pertaining to the realty and of each separate estate or interest therein. If a parcel sought to be condemned is only a part of a larger parcel, they shall find the damages which will accrue to the portion not sought to be condemned, and to each separate estate or interest therein by reason of its severance from the portion sought to be condemned, and the construction of the improvement in the manner proposed by the plaintiff. *Such damages shall be fixed irrespective of any benefit from the improvement.*" (Emphasis added.)

For the foregoing reasons, we hold that the assessments should not have been considered.

The judgment of the Superior Court is reversed, and the cause is remanded for a new trial.

HAYS, C. J., CAMERON, V. C. J., and STRUCKMEYER and HOLOHAN, JJ., concur.