and hospital services and medicines." A.R.S. § 23–1021(B).

Since subjective pain which results in awarding additional earning benefits is sufficient to reopen, *Morrison-Knudsen Co., Inc., v. Industrial Commission,* 27 Ariz. App. 1, 550 P.2d 648 (1976), it logically follows that pain which results in securing any other benefits allowed under the act, should also be sufficient.[1]

We, therefore, hold that an increase in subjective pain, even though unaccompanied by a change in objective physical findings, which results in the procuring of medical benefits for active medical treatment is sufficient to justify a reopening under A.R.S. § 23–1061(H).

The award of the Commission is set aside.

BROOKS and OGG, JJ., concur.

---

675 P.2d 284

**MOBIL OIL CORPORATION, a New York Corporation, Defendant-Appellee,**

v.

**PHOENIX CENTRAL CHRISTIAN CHURCH, an Arizona corporation; Arizona Rebekah Lodge No. 1, Independent Order of Odd Fellows, Defendants-Appellants.**

No. 1 CA–CIV 5509.

Court of Appeals of Arizona, Division 1, Department B.

Aug. 30, 1983.

Reconsideration Denied Oct. 21, 1983.

Review Denied Jan. 24, 1984.

---

1. We note that in *United States Guaranty & Fidelity Company,* no active medical treatment was indicated, but that "supportive care" was prescribed. In this case we are dealing with active medical treatment, that is, treatment for a non-stationary condition which will improve that condition. We do not determine whether "supportive care" under the circumstances presented here, would mandate reopening.

Ryley, Carlock & Ralston by John W. Wall, Phoenix, for defendant-appellee.

Burch & Cracchiolo, P.A. by Frank Haze Burch, Arda S. Rutherford, Edwin C. Bull, Phoenix, for defendants-appellants.

## OPINION

GRANT, Acting Presiding Judge.

This is an action for an allocation of a condemnation award between the lessor

and the lessee of the condemned property. We reverse the decision of the trial court because there is no evidence in the record to support the amount of damages awarded to the lessee.

The realty involved in this lawsuit is owned by Phoenix Central Christian Church, appellant, and leased to Mobil Oil Corporation, appellee. On January 28, 1963, Phoenix Central's predecessor in interest, as lessor, and Mobil, as lessee, executed a service station ground lease of a parcel situated at the southeast corner of Central and Southern Avenues in Phoenix, Arizona. The base term ran from April 1, 1964, through March 31, 1974, and included three options to renew for successive terms of five years each. During the first renewal period, on December 15, 1976, the City of Phoenix filed a complaint in condemnation in connection with the widening of South Central Avenue. A total of 2,471 square feet, or 21%, of Phoenix Central's parcel was taken. Improvements installed at lessee's expense were also taken.

The evidence in the record indicates that before the taking, the gas station had two gas pump islands on the western side of the leased property which pumped gas to cars on both sides of each island. After the taking, the western side of one of the islands could no longer be used, reducing the pumping locations from four to three. The gas pump island affected was a self-service island which pumped a higher volume of gasoline than the inner island. Maneuvering and parking space at the station were also impaired by the taking. Mobil continues to operate a service station on the smaller site, and pays the same rent as it paid before the taking.

Phoenix Central, the City of Phoenix, and Mobil stipulated prior to trial that just compensation for the fair market value of the property taken was $25,000.00. The trial court awarded Mobil $1,400.00 for improvements taken. Phoenix Central does not contest this award. Phoenix Central does contest the allocation of the $23,600.00 balance of the $25,000.00 stipulated amount. The court allocated $12,638.00 to Phoenix Central. This sum was determined to be the present worth of Phoenix Central's reversionary interest of $23,600.00, using a nine percent annual discount rate of 7.29 years, the remaining term of the lease. The residual amount, or $10,962.00, plus $1,400.00 for improvements taken, for a total of $12,362.00 was allocated to Mobil.

Phoenix Central argues on appeal that Mobil did not prove damages to its leasehold interest. More specifically, they object to the trial court's utilization of the "present worth of discounted value" method (also referred to as the "capitalization approach") of allocation of damages between the parties in this case. They argue that the lessee is required to prove damages on the basis of evidence supporting the before and after "bonus value"[1] of the leasehold interest. It is claimed that the "capitalization approach" sidesteps proof and, through the use of annuity tables, produces an amount to be awarded the lessor. Then, regardless of whether the leasehold suffers any damage, the residue of the total award is given to the lessee.

A lessee is entitled to a sum which will adequately compensate for any pecuniary loss resulting from the exercise of the power of eminent domain. *State v. Carlson*, 83 Ariz. 363, 321 P.2d 1025 (1958). The lessee is also entitled to the value of an option of renewal in addition to the value of the unexpired term of the lease. *Id.* The owner of the leasehold estate bears the burden of establishing the damages sustained to its leasehold estate as a result of the partial taking of the land. *County of Maricopa v. Shell Oil Co.*, 84 Ariz. 325, 327 P.2d 1005 (1958).

1. "Bonus value" is the excess of the economic rent (fair market value) of the leasehold interest over the contract rent (amount of rental set forth in the lease agreement). *City of Scottsdale v. Eller Outdoor Advertising Co.*, 119 Ariz. 86, 579 P.2d 590 (App.1978) (Eubank specially concurring); Sackman, *Compensation Upon the Partial Taking of a Leasehold Interest,* Institute on Eminent Domain 35, 49 (1961).

■■■ Where, as here, only a portion of the leasehold is condemned, the measure of damages is the difference between the fair market value of the lease before and after the taking. *Id.; Annot. Eminent Domain —Leasehold,* 17 A.L.R. 4th 337, 372 § 5 (1982); 29A C.J.S. *Eminent Domain* § 143, p. 616 (1965). While values and damages in condemnation proceedings are not always susceptible of precise proof, nevertheless, they must be arrived at through a recognized method which cannot be fundamentally unfair and unjust. *City of Tucson v. Rickles,* 109 Ariz. 82, 505 P.2d 253 (1973). Three traditional appraisal approaches for determining market value recognized by the courts of this and other jurisdictions are the "income approach," the "market data" or sales approach, and the "cost approach." *City of Tucson v. Rickles; City of Scottsdale v. Eller Outdoor Advertising Co.,* 119 Ariz. 86, 579 P.2d 590 (App.1978).

Mobil Oil defends its capitalization approach for allocating damages as one recognized by the courts, *Orange State Oil Co. v. Jacksonville Expressway Authority,* 110 So.2d 687 (Fla.App.), *cert. denied* 114 So.2d 4 (Fla.1959); *Department of Public Works & Buildings v. Metropolitan Life Insurance Co.,* 42 Ill.App.2d 378, 192 N.E.2d 607 (1963), as well as the appraiser's profession. *See* Boyer and Wilcox, *An Economic Appraisal of Leasehold Valuation in Condemnation Proceedings,* 17 U.Miami L.Rev. 245, 267–68 (1963); Speir, *Allocation of the Recovery Between Lessor and Lessee,* Institute on Eminent Domain 159, 165–66 (1968); Johnston, *"Just Compensation" for Lessor and Lessee,* 22 Vand.L.Rev. 293, 305 and n. 55 (1969). We note, however, that the capitalization approach has been highly criticized by commentators. *E.g.,* Boyer and Wilcox, *supra* at 270.[2] The sum of the values of the leasehold and the reversion, as independently determined, is often less than the market value of a fee simple estate in the land. Application of the capitalization approach in such cases confers a windfall upon the lessee, who receives the balance of the award after computation of the value of the lessor's interest. *See* Johnston, *supra* at 309. Conversely, where the aggregate value of leasehold and reversion exceeds the value of a fee simple estate, one of the condemnees will be undercompensated. *Id.* at 309–10.

The problem is compounded when options to renew are available, as they are here. The court utilized a 7.29 year remaining term based on the presumption that Mobil would remain a tenant for the duration of the first five-year renewal period and exercise the option for the second five-year renewal period. Phoenix Central argues that only the 2.29 years remaining on Mobil's first renewal option which had already been exercised was the remaining term and that the options to renew thereafter are not part of the remaining term but are "renewal rights." This would result in a greater award for the lessor and a corresponding smaller award for the lessee. Mobil, on the other hand, argues that the proper remaining perod is 12.29 years—the remaining 2.29 years plus two remaining five-year option periods. This, of course, would decrease the lessor's award resulting in a correspondingly larger award for the lessee.

■■■ The most important criticism of the capitalization method as a basis for apportioning an award between a lessor and lessee is that the method does not coincide with legal standards. Boyer and Wilcox, *supra* at 272. As noted above, the measure of damages of a tenant is the market value of what is lost. *Id.* at 273; *State v. Carlson.* In the record before us, however, there is no evidence of the fair market value of Mobil Oil's lease before

---

2. The capitalization approach is generally based upon the capitalization of the rental income of the property. *See* Boyer and Wilcox, *supra* at 270–71; Johnston, *"Just Compensation" for Lessor and Lessee,* 22 Vand.L.Rev. 293, 305 (1969); Speir, *supra* at 165 (1968). In the case at bar, however, $23,600.00, which is the stipulated amount of total damages less the $1,400.00 for improvements taken, was the figure discounted to present value. We have not been referred to any authority which approves of this version of the capitalization approach.

and after the taking. Thus, Mobil Oil failed to meet its burden of proof for determining its damages as outlined in *Carlson*. Professors Boyer and Wilcox regard the award arbitrarily concluded to be the value of the leasehold estate as follows:

> It is neither a measure of the damages suffered by the lessee nor an approximation of the market value of the lease. Therefore, it is not in accord with either the spirit or the letter of the law. It is merely a convenient way of refusing to admit a lack of knowledge of current real estate values.

Boyer and Wilcox, *supra* at 273.

We share this criticism of the capitalization approach used in the case before us and find that it is not an acceptable method for allocating a condemnation award between a lessor and a lessee. There is no relationship between the loss the lessee suffered and the amount of the allocation received. The matter is therefore reversed and remanded to the trial court so that Mobil Oil, the lessee, may submit proof of its loss based on the fair market values of the lease in accordance with *Carlson*.

Since this matter will go back for the introduction of further evidence and application of a different method for determining the parties' damages, we further comment on the method advocated by Phoenix Central in their brief. They claim that the lessee must determine the bonus value of the leasehold before the condemnation and the bonus value of the leasehold after the condemnation, and that the lessee is entitled to damages in an amount equal to the present worth of the difference between these bonus values. Phoenix Central further argues that if the leasehold had no before condemnation bonus value, then the lessee had nothing to lose and is not damaged by the taking.

We agree that this statement would theoretically be true if there were a complete taking.[3] However, in a partial taking, such as here, the lessee can be damaged even if no before condemnation bonus value exists. For example, if before the condemnation the lessee was paying exactly the fair market value of the leasehold, there was no bonus value. If the condemnation reduces the value of the leasehold while the lessee is still required to pay the same amount of monthly rent, damages result to the extent that the lessee now pays a rent greater than the fair market value of the property. The lessee should be compensated for this damage. As we indicated previously, where a portion of a leasehold is condemned, the measure of damages is the difference between the fair market value of the lease before the taking and the value of the lease after the taking. *State v. Carlson; County of Maricopa v. Shell Oil Co.; Batcheller v. Iowa State Highway Commission*, 251 Iowa 364, 101 N.W.2d 30 (1960); Sackman, *Compensation Upon the Partial Taking of a Leasehold Interest*, Institute on Eminent Domain 35, 50 (1961). This will accurately reflect the lessee's damages even if there was no before condemnation bonus value.

For the foregoing reasons, this matter is reversed and remanded for proceedings in accordance with this opinion.

MEYERSON and EUBANK, JJ., concur.

---

3. In a complete taking, the lessee is entitled to the before condemnation bonus value for the duration of the lease, discounted to present value. *City of Scottsdale v. Eller Outdoor Advertising Co.*, 119 Ariz. 86, 579 P.2d 590 (App.1978) (Eubank specially concurring); Sackman, *supra* at 50. Where there is no bonus value, then the lessee is not damaged, so the theory goes, because the cancellation of the obligation to pay rent equals the fair market rental value of the property. If the contract rent exceeds the fair market rental value then the lessee is relieved of a bad bargain. Johnston, *supra* at 308–09.