4 P.3d 999

**CITY OF PHOENIX, a municipal corporation, Plaintiff–Appellant,**

v.

**Jewel E. WILSON and Spouse, if Married on December 30, 1986; Stewart Allen Wilson, Trustee of the Stewart Allen Wilson Family Trust; Irvin Ivy Wilson, III, Trustee of the Irvin Ivy Wilson, III, Trustee of the Irvin Ivy Wilson, III Family Trust; Louise Wilson, Trustee of the Irvin I. Wilson, Jr., Trust, Defendants–Appellees.**

No. 1 CA–CV 99–0363.

Court of Appeals of Arizona, Division 1, Department C.

March 14, 2000.

Redesignated as Opinion and Publication Ordered April 6, 2000.

Review Granted Sept. 26, 2000.

Mr. William F. McDonald, Assistant City Attorney, Phoenix, for Plaintiff–Appellant.

Mr. Leonard Bell, Dushoff & McCall, Phoenix, for Defendants–Appellees.

## OPINION

EHRLICH, P.J.

¶1 In this action for condemnation by the City of Phoenix, the jury awarded the property owners, the Wilsons, $80,000 for the land taken and $99,000 for severance damages. The City appeals from the judgment entered on the verdict, raising two issues:

1. Whether the trial court abused its discretion by admitting the testimony of the Wilsons' expert appraisal witness concerning the value of the property taken and severance damages; and

2. Whether the trial court abused its discretion by denying the City's motion to strike the jury panel.

Upon our analysis of the first issue, we reverse the judgment and remand this case for further proceedings. Because of this disposition, we need not address the second issue.

## FACTS AND PROCEDURAL HISTORY

¶2 The Wilsons owned a 23.24–acre parcel of land located on the southwest corner of McDowell Road and 71st Avenue in Phoenix. The City condemned 1.4 acres of the property, the portion on the corner of McDowell and 71st Avenue, for a fire station.

¶3 At the time of the condemnation, the full parcel was being used for farming, but the property was zoned RE–43, which allowed for one house per acre, as well as certain other specified uses, including schools and places of worship. In contrast, the City's General Plan indicated that the area should be developed for high-density residential uses such as apartments.

¶4 Prior to trial, the City filed a motion in limine asking the trial court to prohibit the Wilsons' expert appraisal witness, Martin White, from testifying to his opinion of the fair market value of the property taken and the resulting severance damages. It maintained that White was using an unrecognized method of valuation. The trial court denied the motion, but the City was allowed to have a continuing objection to White's testimony on the issues raised in the motion. At the conclusion of its case, the City unsuccessfully moved to strike the testimony.

¶5 White's testimony was consistent with what he had proposed in his written appraisal for the Wilsons. In his opinion, the highest and best use of the property on the date of valuation was to hold the property as though vacant for future investment with the anticipation of splitting the property into two economic units. According to White, a five-acre portion of the property around the northeastern corner, which portion included the 1.4–acre fire-station site, could form a separate economic unit which would command a higher price than the remaining property. This separate economic unit he thought suitable for development for various uses such as a school or place of worship, or for such non-residential but residential-compatible uses as mini-storage, professional offices, bank branch, dependent care facility, mortuary and hotel or motel. Although the latter uses would require rezoning, he thought that rezoning would be reasonably possible.

¶6 White then used a sales comparison approach to separately value hypothetical subdivided parcels, varying between five acres and 13 acres, in order to derive a value for the five-acre economic unit on a before-taking basis. These comparable sales included the sale of a site used for a charter school and one used for a church and school. Based on these comparable sales, White determined that the five-acre economic unit had a $1.25 per square foot value, giving the five-acre parcel a value of $272,250. The 1.4–acre portion taken by the City consequently had a value of $79,600, which he rounded to $80,-000.

¶7 White then calculated that severance damages accrued as a result of the taking. He determined that, because the City took the 1.4 acres on the corner, the remaining 3.6 acres of the five-acre economic unit had lost its economic advantage due to the impact of the taking on access, visibility and frontage. This loss of development potential reduced the value of the remainder of the five-acre economic unit to the value of the adjoining 18.24 acres, which was $.60 per square foot.[1] Accordingly, because the property within the five-acre economic unit declined in value from $1.25 per square foot it would have been worth absent the taking to $.60 per square foot, he figured that the severance damages equaled $99,000.

Irvin Wilson also testified to his opinion of the damages that he and the other owners had incurred as a result of the City's taking of the 1.4–acre portion of property.[2] While he used the same method of appraisal that White had used, in his view, the separate economic unit on the northeast corner of the property should be a ten-acre parcel, causing severance damages for the remaining 8.6 acres of that economic unit, rather than the 3.6 acres in White's appraisal. Wilson also

---

1. White had ascertained that the highest and best use of the 18.24–acre economic unit was for single-family residential purposes. He then used comparable sales to determine the value of that property to be $.60 per square foot.

2. Because the admission of Wilson's opinion was not assigned as an error by the City on appeal, we do not address the admission of his testimony.

believed that the property had a higher value than White had found, $3.00 per square foot for the ten-acre economic unit and $2.00 per square foot for the remainder. Using White's method of calculation based on these altered figures, Wilson valued the property taken at $191,055, and he calculated severance damages to be $371,915.

¶ 8 Conversely, the City's appraiser, Dennis Lopez, believed that no separate economic use existed for any portion of the Wilson property because, on the date of valuation, there was little demand for 1.4 commercial corner lots in the area. He testified that the best and highest use of the entire property was either for immediate use as single-family residential property or for later use for multi-family residential development. From the comparable sales he used, Lopez decided that the Wilsons' property had a value of $.55 per square foot. Thus, in his opinion, the value of the property taken was $35,088, and there were no severance damages because there was no change in the value of the remaining property.

¶ 9 The jury was instructed to determine the fair market of the property taken. It also was told that, because the property taken was part of a larger parcel, the property owners were entitled to severance damages in addition to the value of the property taken. Further, the jury was instructed that severance damages were proper if the fair market value of the remaining property was reduced by the taking; "[t]he measure of severance damages, if any, is the difference between the fair market value of the remaining property before the taking and the fair market value of the remaining property after the taking."

■ ¶ 10 The jury found damages in the amounts recommended by White: $80,000 as the value of the property taken and $99,000 as severance damages. The City's motion for new trial was denied, and the City appealed. We will affirm the trial court's ruling on the admission of evidence absent an abuse of the court's discretion or legal error and prejudice. *See Brown v. U.S. Fidelity and Guaranty Co.*, 194 Ariz. 85, 88, 977 P.2d 807, 810 ¶ 7 (1998).

## DISCUSSION

■ ¶ 11 The City's objection to White's evaluation does not go to his opinion of the highest and best use of the Wilsons' property. Rather, it contends that White used an improper method of determining property value. Although the City acknowledges that the Wilsons had a right to introduce evidence that all or portions of their property had higher or more profitable uses or zoning potential (providing that they also could show a "reasonable probability" of a zoning change in the near future), *see State ex rel. Morrison v. McMinn* 88 Ariz. 261, 264, 355 P.2d 900, 903 (1960); *Flood Control District of Maricopa County v. Hing*, 147 Ariz. 292, 299, 709 P.2d 1351, 1358 (1985), it asserts that a proper method of valuation must be used. Thus, when a witness such as White bases his opinion entirely upon improper considerations, his testimony should be stricken from the record. *See State ex rel. Herman v. Larriva's Ace Electric Co.*, 11 Ariz.App. 452, 454, 465 P.2d 589, 591 (1970). Indeed, "[w]hile values and damages in condemnation proceedings are not always susceptible of precise proof, nevertheless, they must be arrived at through a recognized method which cannot be fundamentally unfair and unjust." *Mobil Oil Corp. v. Phoenix Central Christian Church*, 138 Ariz. 397, 400, 675 P.2d 284, 287 (1983), citing *City of Tucson v. Rickles*, 109 Ariz. 82, 85–86, 505 P.2d 253, 256–57 (1973).

■ ¶ 12 In *State ex rel. Ordway v. Buchanan*, 154 Ariz. 159, 741 P.2d 292 (1987), the court identified two methods to value condemned property in cases of a partial taking: as part of the whole parcel or as a separate economic unit. As it stated:

> In partial taking cases, generally the land taken is valued as part of the whole tract and not as if it stood alone. . . . The rule protects the condemnee by assuring a just award, because in many cases the part taken would be useless and valueless if considered alone.

> However, valuing the part taken as part of the whole is not the exclusive method of valuation in partial taking cases. If the

property taken has a market value as a separate and independent economic use and could therefore command a higher value as a separate entity, this value must be considered without resort to the value of any tract from which it was severed. . . .

In summary, the determination of whether the land taken should be valued separately or as part of the whole is based on a determination of the highest and best use of the land. Where the part taken has a market value based on a separate economic use and commands a higher value as a separate entity than as a part of a larger tract, such value has been allowed. Conversely, the highest and best use of the part taken may be so related to its use with the entire property that the value of the part taken is dependent upon the value of the entire tract.

*Id.* at 162–63, 741 P.2d at 295–96 (citations omitted). While the ultimate choice between valuation methods is a question of fact to be determined by the jury, it is after hearing competent testimony. *Id.* at 163, 741 P.2d at 296.

¶ 13 Moreover, the court warned that, when determining severance damages in a partial taking, a party cannot attempt to combine the "whole parcel" and "separate unit" methods. *Id.* at 164, 741 P.2d at 297.[3] If the "separate unit" method is used, the initial value of the remainder should not be dependent in any way upon the remainder's use as a part of the larger parcel or duplicative damage awards result. *Id.*

¶ 14 The City argues that, rather than valuing the property taken as a separate economic unit or as part of the whole parcel, White valued it as being part of a hypothetical five-acre parcel, which he determined to have a higher value than the rest of the property. By doing so, the City contends, he not only improperly enhanced the value of the part taken but derived an improper means to create severance damages

by concluding that the taking decreased the value of the 3.6–acre remainder of his hypothetical five-acre parcel. The Wilsons respond that *Buchanan* should not be interpreted as holding that the two methods of valuation it discusses are exclusive and, thus, that White's testimony is proper.

¶ 15 Given that the court in *Buchanan* apparently was not asked to consider whether any other method of valuation was possible, we agree that the case does not hold inalterably that no variation from the two methods discussed can ever be considered. However, numerous other Arizona cases have addressed these two methods as if they are the exclusive valuation methods to consider in partial-taking cases. *See Arizona State Land Department v. State ex rel. Herman,* 113 Ariz. 125, 128, 547 P.2d 479, 482 (1976); *Tucson Title Insurance Company v. State ex rel. Herman,* 15 Ariz.App. 452, 489 P.2d 299 (1971). The implication then is that property in a partial-taking case routinely is valued either by the "whole parcel" or the "separate unit" method.

¶ 16 In this regard, the opinion in *City of Los Angeles v. Allen,* 1 Cal.2d 572, 36 P.2d 611 (1934), is helpful. In that case of a partial taking, the parcel taken was of a size and shape that was not susceptible to being valued as a separate and distinct parcel. It was therefore necessary to compute its value as a portion of a larger piece of property. The landowner sought to value it as part of a hypothetical parcel within the whole parcel, which the landowner claimed to be more valuable than the whole parcel. Finding from the facts that the line between the two portions of the tract was arbitrarily chosen, the California Supreme Court held that, in such a circumstance, the larger piece of property must be the entire parcel and not a part of it to which a theoretical value is assigned by the appraisers. *Id.* at 612–13.[4] We agree.

---

3. According to Arizona Revised Statutes section 12–1122(A), severance damages are proper when the land condemned is part of a larger parcel of property. The measure of severance damages is the difference between the market value of the remainder before and after the taking. *See Pima County v. DeConcini,* 79 Ariz. 154, 157, 285 P.2d

609, 611 (1955); *City of Scottsdale v. Church of the Holy Cross Lutheran,* 132 Ariz. 416, 419, 646 P.2d 301, 304 (1982).

4. The Wilsons cite *People ex rel. Department of Public Works v. Corporation of the President of the Church of Jesus Christ of the Latter–Day Saints,*

¶ 17 Here, the boundaries and size of the hypothetical five-acre parcel created by White for his appraisal process were arbitrarily selected. White in fact acknowledged that his hypothetical parcel could have been drawn in other ways and that his selection of the precise size and location of the parcel was a matter of his judgment. *Buchanan* aside, no authority sanctions a method of evaluation that would allow the part taken to be valued as part of a hypothetical parcel within a whole parcel. Under these circumstances, the property taken should have been valued either as a separate unit or as part of the whole parcel. Only after one of these approved methods was selected could it then be determined whether there were severance damages to be calculated.

¶ 18 The Wilsons argue that the verdict should be upheld because White also stated an alternative opinion that the property taken could have been valued as a separate unit at $2.81 a square foot, yielding damages of $179,000, the same total that the jury gave for the combined value of the property taken and severance damages. We disagree. Just because the jury awarded $80,000 for the property taken and $99,000 as severance damages for a total of $179,000 does not mean that it necessarily would have found the property taken to be worth the same $179,000 if it had determined that the property taken should be valued as a separate unit.

¶ 19 The Wilsons then argue that this court should decline to find that the verdict was influenced by White's testimony and that we should find instead that the verdict represented a compromise between the high and low values to which other witnesses testified. This argument is unsupported. The amounts the jury determined as to both the value of the property taken and severance damages were the exact figures White proposed. Moreover, when evidence is improperly admitted, prejudice is presumed. *See Boy v. I.T.T. Grinnell Corp.*, 150 Ariz. 526, 532, 724 P.2d 612, 618 (1986).

13 Cal.App.3d 371, 91 Cal.Rptr. 532 (1970), as supporting the valuation method used by White. To the contrary, the issue in that case, which also

*CONCLUSION*

¶ 20 For the reasons given, the judgment is reversed, and the case is remanded to the trial court for further proceedings consistent with this decision.

CONCURRING: EDWARD C. VOSS, Judge, and JON W. THOMPSON, Judge.

involved a partial taking, was merely whether to value the property taken as a separate unit or as part of the whole.