21 P.3d 388

**CITY OF PHOENIX, a municipal corporation, Plaintiff–Appellant,**

v.

**Jewel E. WILSON and Spouse, if Married on December 30, 1986; Stewart Allen Wilson, Trustee of the Stewart Allen Wilson Family Trust; Irvin Ivy Wilson, III, Trustee of the Irvin Ivy Wilson, III Family Trust; Catherine Louise Wilson, Trustee of the Irvin I. Wilson, Jr., Trust, Defendants–Appellees.**

No. CV–00–0149–PR.

Supreme Court of Arizona, En Banc.

April 10, 2001.

---

**4**

Roderick G. McDougall, Phoenix City Attorney, by William F. McDonald, Jr., Phoenix, Attorneys for Plaintiff–Appellant.

Dushoff & McCall, P.C., by Leonard M. Bell, Phoenix, Attorneys for Defendants–Appellees.

## OPINION

FELDMAN, Justice.

¶ 1 In this eminent domain case, the trial judge permitted the landowners' expert witness to estimate damages based on his opinion that a portion of the original parcel had a different highest and best use from the rest. Thus, the appraiser testified, the property should be treated as two separate units before the taking, with different valuations given to the 5–acre corner, in which the parcel to be taken was located, and the rest of the parcel. The jury verdict was based on that theory. The court of appeals reversed, holding that the trial judge erred in permitting such testimony. *City of Phoenix v. Wilson,* 197 Ariz. 456, 461 ¶¶ 19–20, 4 P.3d 999, 1004 ¶¶ 19–20 (App.2000). We granted review to determine whether the view adopted by the court of appeals deprived the landowners of the just compensation guaranteed by article 2, § 17 of the Arizona Constitution. We have jurisdiction pursuant to Arizona Constitution, article 6, § 5(3). Concluding that the trial judge correctly admitted the testimony, we now affirm the judgment entered on the jury verdict and vacate the court of appeals' opinion.

## FACTUAL AND PROCEDURAL BACKGROUND

¶ 2 The Wilsons owned a 23.24–acre parcel of vacant land at the southwest corner of 71st Avenue and McDowell Road in Phoenix. The City of Phoenix condemned 1.4 acres at the very corner of the parcel for a fire station. The central issue at trial was the valuation of the corner. At the time the condemnation action was filed, the entire 23.24 acre parcel was zoned RE–43, meaning it was limited to low-density residential development (one house per acre) or use as a school or place of worship. The General Plan for the City of Phoenix, however, classified the area that included the Wilsons' property as one that should be developed for high-density residential use such as apartments. The Wilsons' appraiser, Martin White, testified that rezoning was "very likely." Thus, White testified, portions of the property had different highest and best uses, and the property's highest value before the taking was as two parcels: a 5–acre lot at the corner, including the 1.4 acres to be taken, valued at $1.25 per square foot and the remaining 18.24 acres, valued at $0.60 per square foot. The 5 acre corner was suitable for a school, place of worship, or other commercial but residentially compatible uses such as professional offices, dependent care facility, hotel, or mini-storage.

1.462-acre Fire Station Site

McDowell Road

Business Park

Wilson Parcel

Remainder of 5-acre Parcel

N

¶ 3 All of White's opinions were supported by market data, which was described to the jury. In his opinion, the value of the 1.4 acres taken was $1.25 per square foot or $80,000 before the taking. He calculated the severance damages at $99,000, based on his belief that the value of the 3.6–acre portion remaining in the 5–acre corner parcel had been reduced to $0.60 per square foot because it was now only suitable for the same residential development as the Wilsons' other 18.24 acres.

¶ 4 Irvin Wilson, one of the owners, also testified, valuing the entire 23.24–acre parcel at $2,500,000, based on comparable sales in the area. He believed the highest and best use of the property was for high-density housing or commercial use and valued a 10–acre parcel at the corner, which included the 1.4–acre taking, at $3 per square foot and the remaining 13.24–acres at $2 per square foot. According to his calculations, the 1.4–acre parcel taken was worth $162,180 and the taking caused $371,915 in severance damages to the remainder.[1]

¶ 5 However, in the opinion of Dennis Lopez, the City's appraiser, the highest and best use of the Wilsons' entire 23.24 acre lot was immediate development for single-family residential use. Lopez testified that, based on his estimate of highest and best use, no separate economic use existed for any portion of the property. Relying on sales he considered comparable, Lopez appraised the value of the Wilsons' entire 23.24–acre parcel at $0.55 per square foot. He therefore testified that the market value of the 1.4–acre parcel taken was $35,088 and that there were no severance damages. The jury rejected the views of Wilson and Lopez and accepted White's testimony, awarding $80,000 for the part taken and $99,000 in severance damages. Judgment was entered in those amounts.

¶ 6 The court of appeals reversed, holding that the property taken should have been valued only as a discrete, separate unit or as a part of the entire parcel, but not as part of a hypothetical unit less than the entire parcel. *Wilson*, 197 Ariz. at 461 ¶ 17, 4 P.3d at 1004 ¶ 17. The court believed that to allow the jury to follow White's methodology would be to apply an unrecognized method of valuation. *Id.* The court acknowledged that we had previously indicated that highest and best use determines whether land taken should be valued separately or as part of the whole. *Id.* at 459–60 ¶ 12, 4 P.3d at 1002–03 ¶ 12 (citing and quoting from *State ex rel. Ordway v. Buchanan,* 154 Ariz. 159, 162–63, 741 P.2d 292, 295–96 (1987)).

¶ 7 The court of appeals conceded that *Buchanan* had not prohibited White's approach. *Id.* at 460 ¶ 15, 4 P.3d at 1003 ¶ 15. But it believed that "numerous other Arizona cases have addressed these two methods as if they are the exclusive valuation methods to consider in partial-taking cases." *Id.* (citing *Arizona State Land Dep't v. State ex rel. Herman,* 113 Ariz. 125, 128, 547 P.2d 479, 482 (1976); *Tucson Title Ins. Co. v. State ex rel. Herman,* 15 Ariz.App. 452, 489 P.2d 299 (1971)). The court therefore concluded that the property, as it existed before the taking, could not be valued by dividing it into separate units. *Id.* at 461 ¶ 17, 4 P.3d at 1004 ¶ 17. In essence, the court of appeals treated the valuation issue as follows: to properly value land taken when it is a portion of a larger property, the land taken must either be severed and valued separately, or it must be valued as a ratable portion of the whole. Thus, the court held, White's testimony should have been excluded. *Id.* ¶ 19, 4 P.3d at 1004 ¶ 19. The court therefore reversed and remanded to the trial court. *Id.* ¶ 20, 4 P.3d at 1004 ¶ 20. The court did not reach the second issue raised by the City: whether severance damages were properly assessed.

## ANALYSIS

¶ 8 The Arizona Constitution mandates payment of just compensation when the state takes land by eminent domain. Ariz. Const. art. 2, § 17. Just compensation is the amount of money necessary to put the property owner in as good a financial position as if the property had not been taken. *Def-*

---

1. There appears to be some confusion in the court of appeals' opinion regarding the content of Wilson's testimony; because it seems clear that the jury rejected his testimony, we feel no need to address the problem.

*net Land & Inv. Co. v. State ex rel. Herman,* 103 Ariz. 388, 389, 442 P.2d 835, 836 (1968). Market value, what a willing buyer would pay and a willing seller would accept, determines valuation. *Buchanan,* 154 Ariz. at 162, 741 P.2d at 295 (citing *Defnet,* 103 Ariz. at 389, 442 P.2d at 836). The value of the property taken and the amount of severance damages are questions of fact. A.R.S. § 12–1122; *State ex rel. Morrison v. Jay Six Cattle Co., Inc.,* 88 Ariz. 97, 108, 353 P.2d 185, 192 (1960). In determining market value, the fact finder must consider the highest and best use of the land. *Buchanan,* 154 Ariz. at 162, 741 P.2d at 295.

## A. Valuation of part taken

¶ 9 The court of appeals erred in concluding that prior Arizona cases limit the *Buchanan* principle to only two methods of evaluation—the part taken as a separate unit or as part of the whole. *Wilson,* 197 Ariz. at 460 ¶ 15, 4 P.3d at 1003 ¶ 15. In *Arizona State Land Department v. State ex rel. Herman,* one of the cases on which the court of appeals relied, the Highway Department condemned a narrow strip of land approximately sixteen miles long, a total of 109.43 acres of both state trust and privately owned land, for widening of State Highway 40. 113 Ariz. 125, 127, 547 P.2d 479, 481 (1976). Babbitt Ranches, Inc., owned the private land and leased the trust land from the State Land Department. The Babbitt ranch settled with the Highway Department, and the issue of the Land Department's damages was tried without a jury.

¶ 10 The Land Department argued that its parcels should be valued in separate units, thus fixing the land's value at $80 per acre. The trial judge rejected this approach and adopted the Highway Department's argu-

ment that the value of the 109.43–acre parcel taken must be established pro rata as part of the entire 101,000–acre Babbitt ranch. The judge therefore fixed the value of the land at the $25 per acre figure ascribed to the entire ranch as a single unit. We reversed and remanded, commenting that if the property taken is capable of independent use, it must be valued separately and not as part of the whole. *Id.* at 128–29, 547 P.2d at 482–83.

¶ 11 The facts of that case gave us no reason to advert to the situation presented here. We merely held that the trust lands, checkerboarded over a right-of-way crossing sixteen sections, had independent value from the entire 101,000–acre ranch and should be valued separately under A.R.S. § 12–1122(A)(1),[2] which requires that if the parcel taken "consists of different parcels, the value of each parcel [must be determined] separately." In large part, this was because the federal allotments and state grazing leases were made in 640–acre squares. *Id.* at 129, 547 P.2d at 483. In reaching that result, we commented that if the part taken "is capable of being considered a separate and economic unit," its market value "must be considered without resort to the value of any tract from which it is severed." *Id.* at 128, 547 P.2d at 482. But neither *Arizona State Land Department* nor any of the cases it cites held that the "tract from which it is severed" refers only to the entire parcel as it existed before the taking.

¶ 12 In the present case, the court of appeals believed *Arizona State Land Department* implied that "property in a partial-taking case routinely is valued either by the 'whole parcel' or the 'separate unit' method." *Wilson,* 197 Ariz. at 460 ¶ 15, 4 P.3d at 1003 ¶ 15. The application of such a routine method may well be proper as a factual matter in

---

2. A.R.S. § 12–1122, which implements the constitutional guarantee of just compensation, reads, in pertinent part, as follows:

A. The court or jury shall ascertain and assess:

1. The value of the property sought to be condemned and all improvements thereon pertaining to the realty, and of each and every separate estate or interest therein, and if it consists of different parcels, the value of each parcel and each estate or interest therein separately.

2. If the property sought to be condemned constitutes only a part of a larger parcel, the damages which will accrue to the portion not sought to be condemned by reason of its severance from the portion sought to be condemned, and the construction of the improvement in the manner proposed by the plaintiff. The statute has not changed since our opinion in *Arizona State Land Department* issued in 1976.

most cases, but it is not a legal principle. We described the so-called routine situation in *Buchanan*, stating:

> In partial taking cases, generally the land taken is valued as part of the whole tract and not as if it stood alone. Ordinarily this method of valuation gives the part taken—particularly where it is a narrow strip condemned for highway—widening purposes—a greater value. The rule protects the condemnee by assuring a just reward, because in many cases the part taken would be useless and valueless if considered alone.

154 Ariz. at 162, 741 P.2d at 295 (citations omitted).

■ ¶ 13 However, the converse is also true: when the units of property are actually worth more when valued independently, the landowner should have the benefit of that greater, more realistic market-based value. Emphasizing the role of the market in valuation, we held in *Buchanan* that when the part taken has a "separate and independent economic use and could therefore command a higher value as a separate entity, this value must be considered without resort to the value of any tract from which it was severed." *Id.* at 162–63, 741 P.2d at 295–96. This statement referred only to the monetary value of the part actually taken and not to any tract larger than the taking but smaller than the whole parcel. Nowhere in *Buchanan*, however, did we restrict an expert from ascribing different values before the taking to different units of the parcel, as White did in the present case. To do so, when the market supports different uses and resulting differing valuations, would undermine the very rationale on which *Buchanan* rests: the protection of the landowner's interest in receiving just compensation based on the highest and best use of the property. *See also Defnet*, 103 Ariz. at 390, 442 P.2d at 837. Thus, we have never limited such a method of valuation to just the part taken and the remainder.[3]

■ ¶ 14 To exclude White's appraisal would be inconsistent with the longstanding principle that valuation should not be applied mechanistically in eminent domain cases. *See Maricopa County v. Barkley*, 168 Ariz. 234, 240, 812 P.2d 1052, 1058 (App.1990) ("Just compensation has never been reduced to a single formula; rather than a general formula, various ways of valuing property are appropriate depending on the circumstances."); *Selective Resources v. Superior Court*, 145 Ariz. 151, 154, 700 P.2d 849, 852 (App.1984) ("[T]he concept of just compensation should not be reduced to a formula applicable in all situations."); *Moschetti v. City of Tucson*, 9 Ariz.App. 108, 112–13, 449

---

**3.** We do not find the other cases cited by the court of appeals persuasive. In *Tucson Title Insurance Co. v. State ex rel. Herman*, involving a strip of land taken for highway use, the court held that the land taken could not be valued separately but only as part of the whole. 15 Ariz.App. 452, 489 P.2d 299 (1971). But in that case, all the land had the same highest and best use. *Id.* at 454–55, 489 P.2d at 301–02. The court merely held that the condemnee failed to lay the proper foundation to prove that the strip taken was more valuable alone. It rejected the idea that the part taken was more valuable just because it was smaller than the entire parcel and therefore held that valuation of the part taken as part of the whole was the appropriate method because it reflected the highest and best use of all the property. *Id.* at 455, 489 P.2d at 302.

City of Los Angeles v. Allen is also not helpful to the City. 1 Cal.2d 572, 36 P.2d 611 (1934). The *Allen* court rejected the property owner's argument that the referees erred in failing to draw a hypothetical boundary that would create 107-foot deep lots with a higher value. Although *Allen* holds that the part taken could only be valued as part of the whole, its holding must be considered within the factual context of a street-widening case in which the part taken was a 33-foot strip from a 38-acre parcel fronting on a major street. The taking did no more than reduce the 2,000-foot depth of the parcel by the 33-foot strip taken. There was no evidence that the 33-foot strip of land taken had any independent use different from the rest of the property. In *People v. Silveira*, a California Court of Appeal rejected the notion that *Allen* stood for the proposition that property could not be valued as if, in the before condition, it had different values resulting from different highest and best uses. 236 Cal.App.2d 604, 46 Cal.Rptr. 260, 269–72 (1965).

Both *Allen* and *Tucson Title* are strip-taking cases involving small amounts of land that decreased the depth of the parcel but were useless on their own. In the present case, by contrast, the 5-acre unit, of which the 1.4 acres taken was a part, was on the corner of an intersection with a main, heavily traveled street. Both the market data presented and common sense dictate that this unit could have a different and independent value.

P.2d 945, 949–50 (1969) ("One primary objective in a condemnation proceeding is to bring the values of the real-world marketplace into the courtroom."), *overruled on other grounds by City of Tucson v. Rickles*, 15 Ariz.App. 244, 488 P.2d 180 (1971).

¶ 15 As we have seen, the cases do not support a rigid rule that "the property taken should have been valued either as a separate unit or as part of the whole parcel" but not "as part of a hypothetical parcel within the whole parcel." *Wilson*, 197 Ariz. at 461 ¶¶ 17, 16, 4 P.3d at 1004 ¶¶ 17, 16. The independent value rule exists to protect the landowner from being compensated for the most valuable part of his property by averaging the market price for the most valuable with that of the least valuable land. The obverse of that rule is that when the part taken has no independent value before the taking, it must be valued based on the average of the whole parcel because the part taken, having no independent use, would be valueless. *People v. Silveira*, 236 Cal.App.2d 604, 46 Cal.Rptr. 260, 272 (1965) (citing 4 Nichols on Eminent Domain § 14.231).

¶ 16 Thus, when the evidence provides an adequate foundation by common sense and market data showing different highest and best uses, we see no reason why it is improper to consider a large tract of property as if, in the before condition, it were divisible into separate hypothetical entities. *See* 4A Nichols on Eminent Domain § 14.02, at 14–34 (3d ed. rev.1999). Unlike the strip-taking/street-widening cases on which the court of appeals relied, the subject property could clearly be so divisible. The jury concluded that a 5–acre intersection corner, which could probably be rezoned for different and higher use than the rest of the tract, would have a different and higher value than the remainder of the property. Once that is accepted, the owner is entitled to that higher value when the property is taken, whether the taking is of all or only a part of the more valuable portion. The owner must be compensated for the entire damage, which, of course, includes the value of what was taken and the lessening in value of what remains. The result should be the same, no matter

what the methodology. As has been stated in the leading text in the field:

> Much of the confusion in eminent domain litigation has arisen from attempting to apply methods of valuation appropriate in one case to another in which the facts are materially different. The only principle applicable [in] all cases is that of fair and just compensation for the land taken and to that end each case must be viewed in the light of its own facts.

*Id.* at 14–41 (quoting *City of Richardson v. Smith*, 494 S.W.2d 933, 940 (Tex.Civ.App. 1973)). The Wilsons could have developed their 5–acre corner lot without a concurrent development of the remaining 23.24 acres. There is no logical reason to prejudice them for owning more than the most valuable portion taken. Had the City condemned the full 5–acre portion, White could have testified to the value of that parcel. We do not believe that the Wilsons' ownership of more than 5 acres would require a different result. The same logic applies here, where the economic effect of the City's actions was to deny the Wilsons the highest and best use of that 5–acre corner lot. Given the facts of this case, we conclude that White's testimony was admissible and the verdict was supported.

## B. Severance damages

¶ 17 We next turn to the issue of severance damages. The City argues that if the part taken is considered as a separate unit, severance damages should not be allowed for any of the remaining property. Having concluded, however, that White's method of appraisal was properly admitted, we affirm the award of severance damages. Here, again, the question is whether the concept of just compensation required reimbursement to the Wilsons if there was real damage to the remaining 3.6–acre parcel because of the taking of the corner piece. The court of appeals noted that "duplicative damage" awards might result if an approach such as White's were permitted in cases such as this. *Wilson*, 197 Ariz. at 460 ¶ 13, 4 P.3d at 1003 ¶ 13. We see no such danger here.

¶ 18 At trial, White testified that the taking of the 1.4 acres at the corner reduced the value of what had been the 5

acre commercial parcel because of lessened visibility and decreased access to and from the intersecting streets. This, plus the irregularly shaped parcel remaining, would make it difficult to develop the remaining 3.6–acre corner and might destroy its commercial value. In Arizona, severance damages are calculated by comparing the worth of the remaining property before and after the taking.[4] *Defnet*, 103 Ariz. at 391, 442 P.2d at 838. Reduced access is a valid item of severance damages. *Id.* (citing *State ex rel. Morrison v. Thelberg*, 87 Ariz. 318, 350 P.2d 988 (1960)); *see also Jay Six Cattle Co., Inc.*, 88 Ariz. at 107, 353 P.2d at 192.

¶ 19 In *Buchanan*, in which the property owner presented evidence that the part taken should be valued as a separate unit, we held that he could not claim severance damages because the separate unit was not part of a larger parcel. 154 Ariz. at 164, 741 P.2d at 297. "Thus, the before value of the remainder should not be dependent in any way upon the remainder's use as a part of the larger parcel." *Id.* However, in *Buchanan* the landowner argued that the highest and best use of the part taken was as a completely separate, independent unit. In the present case, the Wilsons argued, and the jury agreed, that the highest and best use of the property taken was as part of the larger 5–acre parcel from which it was severed by the taking.

¶ 20 This result was supported by evidence from the market and by common sense. We conclude that the trial judge acted properly in leaving the severance damage issue to the jury.

## CONCLUSION

¶ 21 We find no error in the trial judge's rulings permitting the testimony of the Wilsons' expert and in allowing the jury to consider the issue of severance damages. While trial judges should not permit valuation testimony when it is offered without foundation other than mere speculation or on incorrect factual predicates, we discourage the use of rigid formulae or arbitrary rules that reject

4. The City overlooks the fact that loss of commercial development potential would reduce the value of the remainder to the same extent no

valuation opinions based on a proper foundation—common sense and market information.

¶ 22 The court of appeals' opinion is vacated and the trial court's judgment is affirmed.

CONCURRING: THOMAS A. ZLAKET, Chief Justice, CHARLES E. JONES, Vice Chief Justice, FREDERICK J. MARTONE, Justice, RUTH V. McGREGOR, Justice.

matter whether the remainder were measured in terms of an area of 3.6 acres or 21.84 acres.